## UNITED STATES *v.* WIESENFELD WAREHOUSE CO.

No. 92.   Argued January 16, 1964.—Decided February 17, 1964.

*Louis F. Claiborne* argued the cause for the United States.   With him on the brief were *Solicitor General Cox, Assistant Attorney General Miller, Beatrice Rosenberg* and *William W. Goodrich.*

*James S. Taylor* argued the cause for appellee.   With him on the brief was *Clarence G. Ashby.*

MR. JUSTICE STEWART delivered the opinion of the Court.

Section 301 (k) of the Federal Food, Drug, and Cosmetic Act prohibits the "alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale . . . after shipment in interstate commerce and results in such article being adulterated or misbranded." [1] Section 402 of the Act provides, among other things, that "[a] food shall be deemed to be adulterated—(a) . . . (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health . . . ." [2] The question presented by this appeal is whether a criminal information which alleges the holding of food by a public storage warehouseman (after interstate shipment and before ultimate sale) under insanitary conditions in a building accessible to rodents, birds and insects, where it may have become contaminated with filth, charges an offense under § 301 (k).

The Government filed a criminal information containing allegations to this effect [3] in the District Court for

---

[1] 52 Stat. 1040, 21 U. S. C. § 331 (k).

[2] 52 Stat. 1040, 21 U. S. C. §§ 342 (a)(3) and (4).

[3] The information was in six counts, the counts differing only with respect to the particular shipment or product involved. Each count charged that appellee had received an article of food which had been shipped in interstate commerce, and that while this food was being held for sale, appellee caused it to be held in a building accessible to rodents, birds, and insects, thus exposing it to contamination, and thereby adulterating the food within the meaning of § 402 (a) of the Act, 21 U. S. C. § 342 (a), in that the food consisted in part of a filthy sub-

the Middle District of Florida, charging the appellee, a public storage warehouseman, with violations of § 301(k). The court construed § 301(k) as not applying to the mere act of "holding" goods, and dismissed the information for failure to allege an offense under the statute. 217 F. Supp. 638, 639. The order of dismissal was appealed by the Government under the Criminal Appeals Act, which gives this Court jurisdiction to review on direct appeal a judgment dismissing an information on the basis of a "construction of the statute upon which the . . . information is founded."[4] We noted probable jurisdiction. 373 U. S. 921. For the reasons which follow, we reverse the judgment of the District Court.

In arriving at its construction of the statute, the District Court reasoned that § 301(k) "as it is presently written, is too vague and indefinite to apply to the mere act of 'holding' goods." 217 F. Supp., at 639. Accordingly, "in an effort to uphold the statute as constitutional," the court applied the rule of *ejusdem generis* to limit the words "the doing of any other act" in § 301 (k) to acts of "the same general nature" as those specifically enumerated in the subsection, *i. e.,* acts relating to the alteration, mutilation, destruction, obliteration, or removal of the labeling of articles. *Ibid.* We find such reliance on the rule of *ejusdem generis* misplaced; its application to § 301 (k) is contrary to both the text and legislative his-

---

stance, to wit, rodent excreta, insect larvae, etc., and in that it was held under insanitary conditions whereby it might have become contaminated with filth.

[4] "An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded. . . ." 62 Stat. 844, 18 U. S. C. § 3731.

tory of the subsection, and unnecessary to a constitutionally permissible construction of the statute.

The language of § 301 (k) unambiguously defines two distinct offenses with respect to food held for sale after interstate shipment. As originally enacted in 1938, the subsection prohibited "[t]he alteration, mutilation, destruction, obliteration, or removal" of the label, or "the doing of any other act" with respect to the product which "results in such article being misbranded." [5] The section was amended in 1948 to prohibit additionally "the doing of any other act" with respect to the product which "results in such article being adulterated." [6] The acts specifically enumerated in the original enactment relate to the offense of misbranding through labeling or the lack thereof. The separate offense of adulteration, on the other hand, is concerned solely with deterioration or contamination of the commodity itself. For the most part, acts resulting in misbranding and acts resulting in adulteration are wholly distinct. Consequently, since the enumerated label-defacing offenses bear no textual or logical relation to the scope of the general language condemning acts of product adulteration,[7] application of the rule of *ejusdem generis* to limit the words "the doing of

---

[5] 52 Stat. 1042, 21 U. S. C. § 331 (k). See *United States* v. *Sullivan,* 332 U. S. 689.

[6] 62 Stat. 582, 21 U. S. C. § 331 (k).

[7] The House Committee concerned with the proposed amendment to § 301 (k) was aware of this textual problem.

"The present section 301 (k) forbids, first, certain acts with respect to the labeling of an article, and, second, 'any other act with respect to' the article itself which results in its being misbranded. . . . [A]dulteration more often occurs as a result of acts done to or with respect to the article itself. Since the section already contains the broad phrase 'any other act with respect to' the article, and since this phrase is not limited by the preceding enumeration of forbidden acts with respect to the labeling, there is no need in making it applicable to adulteration, to change the existing statutory language in this regard." H. R. Rep. No. 807, 80th Cong., 1st Sess., p. 3.

any other act" resulting in product adulteration in § 301 (k) to acts of the same general character as those specifically enumerated with respect to misbranding is wholly inappropriate.

Moreover, the legislative history makes plain that no such application of the rule was intended. As the House Committee Report on the proposed 1948 amendment unequivocally stated:

> "It seems clear that under the subsection as now in force the rule of ejusdem generis would not apply in interpreting the words 'or the doing of any other act . . . ,' and it is even more clear that this rule will not apply in the interpretation of the subsection as amended by this bill." [8]

It is equally clear from this legislative history that Congress intended to proscribe the particular conduct charged in the information filed below—the holding of food under insanitary conditions whereby it may have become contaminated. The House Committee Report noted that the amended section would "penalize, among other acts resulting in adulteration or misbranding, the act of holding articles under insanitary conditions whereby they may become contaminated with filth or rendered injurious to health," and emphasized that the Committee intended the amendments to be applied to their fullest constitutional limits.[9]

---

[8] *Id.*, at pp. 3–4.

[9] *Id.*, at p. 6. During the Senate hearings on the amendment, the Associate Commissioner of Food and Drugs explained that "under the bill as enacted here, if there was a definite showing of violation on the part of the warehouse which had this material stored, a prosecution of them criminally for doing the act of holding under these insanitary conditions, which result in adulteration could ensue." Hearing before a Subcommittee of the Committee on Interstate and Foreign Commerce, United States Senate, on S. 1190 and H. R. 4071, 80th Cong., 2d Sess., April 17, 1948.

Congress chose statutory language appropriate to effectuate this purpose. Section 301 (k), as amended, prohibits "any . . . act" which results in adulteration of the product. And food is adulterated if it "has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth." [10] This language defines with particularity an explicit standard of conduct. Section 301 (k), read together with the definition of food adulteration contained in § 402 (a)(4), therefore, gives ample warning that the "holding" or storing of food under insanitary conditions whereby it may have become contaminated is prohibited.

It is settled law in the area of food and drug regulation that a guilty intent is not always a prerequisite to the imposition of criminal sanctions. Food and drug legislation, concerned as it is with protecting the lives and health of human beings, under circumstances in which they might be unable to protect themselves, often "dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. *United States* v. *Balint,* 258 U. S. 250." *United States* v. *Dotterweich,* 320 U. S. 277, 281.

It is argued, nevertheless, that the Government in this case is seeking to impose criminal sanctions upon one "who is, by the very nature of his business powerless" to protect against this kind of contamination, however high the standard of care exercised. Whatever the truth of this claim, it involves factual proof to be raised defensively at a trial on the merits. We are here concerned only with the construction of the statute as it relates to the sufficiency of the information, and not with the scope and

---

[10] See note 2, *supra.*

reach of the statute as applied to such facts as may be developed by evidence adduced at a trial.

Finally, the appellee attempts to uphold the dismissal of the information on a ground not relied on by the District Court. The appellee says that it was a bailee of the food, not a seller, and that it was not holding the food for sale within the meaning of § 301 (k). Both the language and the purpose of the statute refute this construction. The language of § 301 (k) does not limit its application to one holding title to the goods, and since the danger to the public from insanitary storage of food is the same regardless of the proprietary status of the person storing it, the purpose of the legislation—to safeguard the consumer from the time the food is introduced into the channels of interstate commerce to the point that it is delivered to the ultimate consumer—would be substantially thwarted by such an unwarranted reading of the statutory language. *United States* v. *Kocmond,* 200 F. 2d 370, 372; cf. *United States* v. *Sullivan,* 332 U. S. 689, 696; *United States* v. *Dotterweich,* 320 U. S. 277, 282.

Accordingly, we hold that a criminal information charging a public storage warehouseman with holding food (after interstate shipment and before ultimate sale) under insanitary conditions whereby it may have become contaminated with filth, charges an offense under § 301 (k) of the Federal Food, Drug, and Cosmetic Act. The order of the District Court dismissing the information is therefore reversed and the case is remanded to that court for further proceedings consistent with this opinion.

*Reversed and remanded.*