UNITED STATES of America,
Plaintiff,

v.

Richard CHALAIRE and Murray D.
Latapie, Defendants.

Crim. No. 31929.

United States District Court,
E. D. Louisiana,
New Orleans Division.

July 21, 1970.

Horace P. Rowley, III, Asst. U. S. Atty., for plaintiff.

Frank Klein, New Orleans, La., for defendants.

CASSIBRY, District Judge:

On October 30, 1969, the Grand Jury indicted Richard Chalaire and Murray D. Latapie for violating the Federal Hazardous Substances Act (FHSA) (15 U.S.C. § 1263(b)). Count 1 alleges that defendant Chalaire "did sell and cause to be sold to Wayne Mark Dolese one (1) carton of Silver Salute (Silver King) fireworks." Counts 2, 3 and 4 allege that on 3 separate occasions both defendant Chalaire and defendant Latapie "did sell and cause to be sold" to Food and Drug Inspectors various quantities of cherry bomb fireworks. On November 5, both defendants pled not guilty. Defendants moved to dismiss the indictment on the ground that (1) the FHSA does not prohibit the *sale* of banned hazardous substances that have been shipped in interstate commerce and (2)

the silver kings and cherry bombs are common fireworks (Class C fireworks). On February 6, 1970, this Court denied the motion. On March 20, the case was tried without a jury.

This opinion will serve as the Court's findings of fact and conclusions of law. Fed.R.Crim.Proc., rule 23(c).

FACTS

During December 1968 and January 1969, defendant Richard Chalaire owned and operated the Plaquemine Parish Bar in Plaquemine Parish, Louisiana. The bar is 100 feet from the St. Bernard Parish line. He had owned the bar for 22 years. For more than 6 years Chalaire sold Class B fireworks to the public from a room connected to the bar. He bought these fireworks from itinerate jobbers. He advertised his fireworks by posting large signs in front of and at the side of the bar. Chalaire made profits from selling these fireworks.

During December 1968 and January 1969, defendant Murray D. Latapie worked part time as a bartender at the bar. He also sold fireworks as part of his duties.

On December 27, 1968, Wayne Mark Dolese bought 1 carton of silver king fireworks from the bar. He paid $10.00. The box was marked "Do not sell to children" and "Keep out of reach of children." At the time Dolese was 13 years old. He and 3 other boys, aged 13, 17 and 18, drove from New Orleans to the bar to purchase fireworks. Dolese said the bar was their "favorite place." He bought fireworks there several times before. Besides Dolese, each boy bought Class B fireworks for himself. The fireworks were displayed on shelves in the room connected to the bar. At the time of the sale there were some other salesmen and customers in the room. The man who sold Dolese the silver kings did not ask him how old he was or whether he intended to use the fireworks for agricultural purposes. The man who sold silver kings to one of the

other boys also did not ask him these questions.

On December 31, 1968, Dolese attempted to make a bomb by putting the gunpowder from some of the silver kings into a 35 M.M. film canister. The bomb exploded in front of Dolese while he was working. He almost died. He lost almost all of the fingers on his left hand. He lost most of the vision in his right eye. The hearing in his right ear was affected. The explosion blew a hole in his leg big enough to put a baseball through.

On January 11, 1969, J. Carrol Sellers, a Food and Drug Inspector, and an adult, bought ½ gross of cherry bombs at the bar. He paid $11.00. The box was unlabeled. Defendant Latapie sold them to Sellers. Latapie did not ask Sellers whether the cherry bombs would be used by children or whether they would be used for agricultural purposes.

On January 15, 1969, L. A. Rodriguez, a Food and Drug Inspector, and an adult, bought 1 box of cherry bombs from the bar. He paid $5.00. The box was unlabeled. Defendant Latapie was identified as the seller. Again Latapie did not ask whether the cherry bombs would be used by children or whether they would be used for agricultural purposes.

On January 17, 1969, Inspector Sellers bought 1 gross of cherry bombs from the bar. He paid $10.00. The box was unlabeled. Defendant Latapie sold them to him. Again Latapie did not ask Sellers whether the cherry bombs would be used by children or whether they would be used for agricultural purposes. At the end of the sale defendant Chalaire came on the premises.

The silver kings and cherry bombs in question are both flammable and generate pressure through decomposition, heat or other means. The silver kings produce an audible effect by a charge of 40 grains of pyrotechnic composition. The cherry bombs produce an audible effect by a charge of 20 grains of pyrotechnic composition.

No business in Louisiana has ever been licensed to manufacture silver kings or cherry bombs by the State Fire Marshal. Expert testimony proved beyond a reasonable doubt that the silver kings in question were manufactured in Ohio, the cherry bombs in New Jersey.

At the trial the only factual dispute was whether Dolese and the other 3 boys actually bought the fireworks at the Plaquemine Parish Bar. Dolese and 1 other boy testified that they bought the fireworks there. Both identified pictures of the bar and described the interior in great detail. Defendant Chalaire, the owner, denied this and testified that he had instructed his salesmen not to sell to children. Chalaire agreed that Dolese fell within this category. Chalaire's testimony was improbable. The bar was 100 feet from the St. Bernard Parish line. He admitted that he knew it was illegal to sell fireworks in St. Bernard Parish. He admitted doing a big fireworks business and it is common knowledge that many children buy fireworks. Finally, when interviewed by a Food and Drug Inspector soon after the sales, he did not mention these instructions.

In addition at the trial Chalaire's credibility was effectively impeached. On February 6, 1969, Chalaire swore in an affidavit that (1) "The cherry bombs were purchased about two or three years ago, maybe longer from some man driving a panel truck. I paid about $28.00 for the one case I bought and received no bill of sale" and (2) "No cherry bombs have been sold for at least six months. Those of the case that were sold previously were sold for about $3.50 a box. I have never had any M–80's or silver kings on hand." At the trial Chalaire admitted that he bought the cherry bombs in December, 1968, not "two or three years ago," that he paid over $200 for more than 1 case and he received at least 3 bills of sale. These 3 bills of sale were introduced by the Government. Defendant also admitted that cherry bombs had been sold 1 month before and

that he had sold silver kings and M–80's. The sale price was over $10.00 a box. Clearly, defendant's inconsistent statements impeached his credibility.

## LAW

At the beginning of the last decade Congress found that hazardous substances were causing severe injury to many children. In 1960 they passed the Federal Hazardous Substances Labeling Act. That Act required rigorous labeling of hazardous substances. *See,* 1960 U.S.Code Congressional and Administrative News, p. 2840. After 6 years of experience Congress found that: "Cautionary labeling is adequate protection for most products. But there are extremely hazardous products which cannot be made safe for use by cautionary labeling, particularly products intended for use by children." 1966 U.S.Code Congressional and Administrative News, pp. 4095, 4096. Therefore in 1966 Congress amended the Act by passing the Child Protection Act. One purpose of the new Act was "to ban the sale of toys and other children's articles containing hazardous substances." 1966 U.S.Code Congressional and Administrative News, p. 4095. The name of the Act was changed to the Federal Hazardous Substances Act.[1]

15 U.S.C. § 1263(b) provides in part:

"The following acts and the causing thereof are prohibited:

(b) * * * The doing of any other act with respect to a hazardous substance, if such act is done while * * * the substance is held for sale (whether or not the first sale) after shipment in interstate commerce, and results in the hazardous substance being a * * * banned hazardous substance."

The penalty for a violation is provided in 15 U.S.C. § 1264.

The elements of the offense are:

1. Defendant did or caused the doing of any act with respect to a hazardous substance, while

2. The hazardous substance is held for sale after shipment in interstate commerce, and

3. The act or the causing thereof results in the hazardous substance being a banned hazardous substance.

A. *Defendants Chalaire and Latapie did and caused the doing of an act with respect to a hazardous substance by selling silver kings and cherry bombs.*

█ Selling a hazardous substance is "the doing of any act with respect to a hazardous substance." The legislative history of the Act clearly shows that Congress intended "to ban the *sale* of toys and other children's articles containing hazardous substances." 1966 U. S.Code Congressional and Administrative News, p. 4095 (Emphasis added). The Supreme Court has so interpreted an anologous provision of the Food, Drug and Cosmetic Act. United States v. Wiesenfeld Warehouse Co., 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964).

█ Silver kings and cherry bombs are hazardous substances. 15 U.S.C. § 1261(f) (1) (A) (v. and vi.) provides:

"(f) The term 'hazardous substance' means: 1. (A) Any substance or mixture of substances which * * * (v) is flammable, or (vi) generates pressure through decomposition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children."

*See,* 21 C.F.R. 191.1 (k and m).

Here, the evidence showed beyond a reasonable doubt that the silver king

---

1. In 1962, the Louisiana Legislature expressly prohibited the *possession, sale* or *use* "for any purpose whatsoever * * * cherry bombs, tubular salutes." LSA–R.S. 51:651.1. (Emphasis added)

and cherry bombs (1) were flammable, (2) generated pressure through decomposition and heat, and (3) may cause substantial personal injury as a proximate result of any reasonably foreseeable handling or use.

■ Both defendants are liable for selling the hazardous substances. Section 1263 expressly provides that "The following acts and *the causing thereof* are prohibited * * *" (Emphasis added). The evidence that defendant Latapie personally sold the cherry bombs in Counts 2, 3 and 4 is undisputed. Defendant Chalaire is liable on all 4 counts because he caused the sales. United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); Palmer v. United States, 340 F.2d 48 (5 Cir.1964). Here, Chalaire admitted that he owned the bar, purchased the inventory of silver kings and cherry bombs, advertised them, hired persons to sell them and collected the profits. The fact that Chalaire did not personally do the selling is immaterial.

B. *The silver kings and cherry bombs were held for sale after shipment in interstate commerce.*

15 U.S.C. § 1261(b) provides:

"The term 'interstate commerce' means (1) commerce between any State or territory and any place outside thereof * * *"

■ The interstate shipment of a product is proved if the evidence shows that the product is found within a state, and that the product was either not manufactured there or was manufactured in another state. Palmer v. United States, 340 F.2d 48 (5 Cir.1964). Here, the evidence showed that no Louisiana business had ever been licensed to manufacture silver kings or cherry bombs. In fact manufacture of those type fireworks (Class B) was prohibited. In addition an expert in the chemical analysis of fireworks testified that the silver kings were manufactured in Ohio and the cherry bombs were manufactured in New Jersey. I find beyond a reasonable doubt that they were so manufactured.

C. *The sale of the silver kings and the cherry bombs resulted in those hazardous substances being "banned hazardous substances".*

15 U.S.C. § 1261(q) (1) (A) provides:

"(q) (1) The term 'banned hazardous substance' means (A) any toy, or other article intended for use by children, which is a hazardous substance * * *"

■ Silver kings and cherry bombs are "toys" within the meaning of the Act. The Act itself expressly excludes Class C (common) fireworks but not Class B fireworks. 15 U.S.C. § 1261(q) (1) (ii). Also the legislative history of the Act clearly shows that Congress intended to include silver kings and cherry bombs (Class B fireworks) within the definition of toy. 1966 U.S.Code Congressional and Administrative News, pp. 4095, 4096, *see especially* 4099.

The silver kings and cherry bombs are not exempt from the definition of banned hazardous substances because (1) they are not common fireworks and (2) they were not intended and used for bona fide agricultural purpose. 15 U.S. C. § 1261(q) (1) (ii) provides:

"That the Secretary, by regulation, * * * (ii) shall exempt from clause (A), and provide for the labeling of, common fireworks (including toy paper caps, cone fountains, cylinder fountains, whistles without report and sparklers) to the extent that he determines that such articles can be adequately labeled to protect the purchasers and users thereof."

21 C.F.R. 191.65(a) (2 and 3) provides:

"(a) The term 'banned hazardous substance' as used in section 2(q) (1) (A) of the act and § 191.1(a) shall not apply to the following articles provided that these articles bear labeling

giving adequate directions and warnings for safe use:

\* \* \* \* \* \*

(2) Common fireworks devices suitable for use by the public (such as toy paper caps, cone fountains, cylinder fountains, whistles without report, and sparklers, but not including fireworks devices that may be confused with candy or other food, such as 'dragon eggs' and 'crackerballs,' also known as 'ball-type caps'), if such devices are:

(i) Designed to produce only visible effects by combustion, or are

(ii) Designed to produce audible effects, if the audible effect is produced by a charge of *not more than 2 grains* of pyrotechnic composition.

(3) Fireworks that are classified as devices within the meaning of the Federal Insecticide, Fungicide, and Rodenticide Act and that are intended and used for bona fide agricultural purposes, such as protection of crops from depredation by birds and animals. An exemption under this section does not apply if the fireworks involved are diverted or distributed for *any other use in or about a household."* (Emphasis added)

Here the evidence showed that the silver kings and cherry bombs produced audible effects by a charge of more than 2 grains of pyrotechnic composition. The cherry bombs contained *20 grains* and the silver kings contained about *40 grains.* The evidence also showed that the fireworks were not intended or used for bona fide agricultural purposes. The buyers were never asked whether they intended to use the fireworks for agricultural purposes and the fireworks never were so used.

■ The sale of silver kings or cherry bombs to a child or to an adult without first asking the adult whether a child would use them results in those hazardous substances being banned haz-

ardous substances. The purpose of the Child Protection Act is to protect children. *This is accomplished by banning* hazardous toys from *channels* of interstate commerce that lead to children. All fireworks are *not* absolutely banned. Class B fireworks are *not* banned from channels of interstate commerce leading to persons who use them for bona fide agricultural purposes. But Class B fireworks are banned from channels that lead to children. Of course Class C fireworks are not banned at all even if the channel leads to children.

■ Here, Chalaire is liable for the sale of silver kings to Dolese because Dolese was a child at the time of the sale. Chalaire admitted that Dolese was a child and should not have been sold Class B fireworks as a matter of common sense.[2] The fact that the cherry bombs in Counts 2, 3 and 4 were sold to an adult is immaterial. The cherry bombs were toys. No one asked the buyer whether children would use them. The seller had a duty to inquire. *Cf.* United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). Both Chalaire and Latapie are liable for this sale.

D. *Knowledge and willfulness are not elements of the offense. But in any event knowledge and willfulness were proved beyond a reasonable doubt.*

■ Knowledge and willfulness are not elements of 15 U.S.C. § 1263(b). Nowhere in the statute are these elements mentioned. It is clear from the legislative history of the statute that Congress intended that knowledge and willfulness not be elements. The Child Protection Act of 1966 amended the Federal Hazardous Substances Labeling Act of 1960. The prohibited acts section of the latter Act is "patterned after the corresponding section of the Federal Food, Drug and Cosmetic Act [21 U.S.C. § 331]". 1960 U.S.Code Congressional and Administrative News, p. 2840. The

2. The National Safety Council reports that almost ½ of all persons injured by fireworks are between 11 & 20 years old.

Supreme Court and the Fifth Circuit have interpreted 21 U.S.C. § 331 as *not* requiring knowledge and willfulness. United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); United States v. Wiesenfeld Warehouse Company, 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964); Palmer v. United States, 340 F.2d 48 (5 Cir.1964).

But in any event even if knowledge and willfulness are elements, those elements were proved beyond a reasonable doubt. As to knowledge, both defendants admitted knowing that they sold silver kings and cherry bombs and that Dolese was a child who should not be sold that class fireworks. Both defendants admitted that they knew that fireworks could not be sold in St. Bernard Parish which was only 100 feet away. As to willfulness the evidence showed that defendants had a motive (money), a plan (inventory, advertising and salesmen), knowledge and did similar acts in the past. Dolese and Rooks testified that they had bought Class B fireworks from the bar before. Of course besides the Dolese sale, the defendants were responsible for the 3 sales to the Food and Drug Inspectors. There is no evidence that any of the silver kings or cherry bombs were sold by mistake or accident. The fact that the cartons containing cherry bombs were completely unlabeled indicates that defendants were conscious of the illegality of their acts. Defendant Chalaire's false exculpatory statements clearly show that he was conscious of his own guilt. It may be argued that defendants were ignorant of the law. But ignorance of the law is no defense.

### VERDICT

The Court finds beyond a reasonable doubt that both defendants are guilty as charged. The United States Probation Office is directed to prepare a pre-sentence report. This matter will be set down for sentencing as soon as that report is prepared.