UNITED STATES of America, Plaintiff,

v.

ARTICLES OF DRUG, consisting of the following: 15 CARTONS, more or less each carton containing 12/2500 tablet bottles, labeled in part: (bottle) "ZENITH * * * HYDRALAZINE HCL, HYDROCHLOROTHIAZIDE AND RESERPINE TABLETS * * * 2500 Tablets * * Zenith Laboratories, Inc., Northvale, New Jersey 07647 * * * Control No. 2335–58 * * * "

and

1/1000 tablet bottles, more or less, labeled in part: (bottle) "Zenith * * * Hydralazine HCL, Hydrochlorothiazide and Reserpine tablets * * * 1000 tablets * * * Zenith Laboratories, Inc., Northvale, New Jersey 07647 Control No. 2338–58 * * * " 160 cartons, more or less, each carton containing 12/1000 tablet bottles labeled in part: (bottle) "Zenith * * * Hydralazine HCL, Hydrochlorothiazide and Reserpine tablets * * * 1000 tablets * * * Zenith Laboratories, Inc., Northvale, New Jersey 07647 * * * Control No. 2335–62R * * * ".

Civ. No. 82–1139.

United States District Court, D. New Jersey.

March 21, 1983.

John L. Conover, Ribis, McCluskey, Ruane & Graham, Short Hills, N.J., for defendant.

Ronald H. Clark, Asst. U.S. Atty., Newark, N.J., Donald E. Segal, Rockville, Md., Office of General Counsel, Food & Drug Adm., for plaintiff.

SAROKIN, District Judge.

In December, 1981, during an inspection of Zenith Laboratories, Northvale, New Jersey (Zenith or Claimant), Investigator Elaine M. Hall of the United States Food and Drug Administration (FDA) collected samples of two articles of drug which had been manufactured by Zenith; that is, Lots 2335–58 and 2335–62R of Zenith's Hydralazine HCL, Hydrochlorothiazide and Reserpine Tablets. These samples were analyzed and tested by FDA's National Center for Drug Analysis. The samples failed to meet the prescribed standards for content uniformity for one of the articles' components, reserpine.

On April 13, 1982, Plaintiff filed a complaint for forfeiture, alleging that Lots 2335–58 and 2335–62R are adulterated while held for sale after shipment in interstate commerce, within the meaning of 21 U.S.C. Section 351(b), in that they purport to be a drug, but their strength differs from, and their quality falls below, the standard set forth in the United States Pharmacopeia (USP). The complaint alleges that the drugs fail to meet the standard for content uniformity set forth in the USP. Pursuant to Warrant for Arrest issued by this court, the United States Marshal for this District seized said articles on August 12, 1982. On August 20 Zenith filed a Claim to the articles. On September 7 Zenith filed an Answer.

Zenith has filed a motion to dismiss the complaint for lack of jurisdiction over the subject matter alleging that the seized articles are not "held for sale" after shipment in interstate commerce as required by 21 U.S.C. Section 334(a). Zenith concedes that the articles of drug involved were placed in the stream of interstate commerce before Zenith was advised of the deficiency in the product. Zenith claims that prior to release of the drugs they were tested, with methods at variance with the method set forth in the USP, and found to be acceptable. Zenith argues that the articles were not being "held for sale" either at the time of seizure or at the time of filing of the complaint, because Zenith voluntarily withheld them from sale. Zenith points to an inter office memorandum dated December 22, 1981, directing that Lot number 2335–62R "shall be held pending FDA and Zenith outside laboratory testing results." * Zenith claims that the articles of drug were withheld from sale in the expectation that the Zenith method of testing would be approved in the USP, or that reformation of the drugs would bring them into compliance with FDA standards.

The court has jurisdiction over the subject matter of this suit if the requirements of 21 U.S.C. Section 334(a)(1) are met:

Any article of food, drug, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce, or which may not, under the provisions of section 344 or 355 of this title, be introduced into interstate commerce, shall be liable to be proceeded against while in interstate commerce, or

* This memorandum does not direct the withholding of Lot 2335–58.

at any time thereafter, on libel of information and condemned in any district court of the United States or United States court of a Territory within the jurisdiction of which the article is found...

■ The term "held for sale" in the statute has been broadly construed. "An article is 'held for sale' if it is used for any purpose other than personal consumption." *United States v. Articles of Animal Drug Containing Deithylstilbestrol,* 528 F.Supp. 202, 205 (D.Neb.1981) (drugs were held for sale despite the claimant's representation that, at the time of seizure, the drugs were being held for return to the manufacturer for refund of the purchase price.) This is consistent with the broad purpose of the statutory scheme. "The Act was designed to safeguard the consumer from the time the article is introduced into the stream of interstate commerce all the way to the moment of delivery to the ultimate consumer." *Id.* at 206, citing *United States v. Wiesenfeld Warehouse Co.,* 376 U.S. 86, 92, 84 S.Ct. 559, 563, 11 L.Ed.2d 536 (1964). The articles of drug seized were not being held for personal consumption by Zenith, so they were being "held for sale" within the meaning of the statute both at the time of seizure and at the time of the filing of the complaint.

The fact that Zenith may have intended in the future to cure any adulteration of these drugs does not alter the conclusion that they were being held for sale.

In *United States v. 52 Drums Maple Syrup,* 110 F.2d 914 (2d Cir.1940), the trial court had allowed claimant to introduce evidence in support of its argument that the statute did not apply to seizures of maple syrup alleged to contain a poisonous substance, lead, because Claimant would have removed the offending lead before it sold or otherwise disposed of the syrup. The Second Circuit reversed, stating, that this "was a wholly false issue. The intended use to which adulterated food is to be put after it has been shipped in interstate commerce is immaterial on the question of the government's right to forfeit because of such shipment." *Id.* at 915.

■ The statute provides that an adulterated drug "shall be liable to be proceeded against while in interstate commerce, or at any time thereafter ..." Zenith argues that this language does not allow seizure when the drug has traveled up the stream of interstate commerce, back to the manufacturer. This construction of the statute is plainly incorrect. "In plain, direct and unambiguous language, 21 U.S.C.A. Section 334(a)(1) provides that any adulterated article of drug which is held for sale after shipment in interstate commerce is subject to seizure and condemnation." *Articles of Animal Drug,* 528 F.Supp. at 206.

> The government may condemn a device even though not inherently dangerous and not presently in interstate commerce ... (citations omitted). Once an article is misbranded, it has violated the law and is subject to seizure at any time thereafter and no subsequent action can purge it from the violation.

*United States v. Device Labeled "Cameron Spitler, Amblyo-Syntonizer,"* 261 F.Supp. 243, 246 (D.Neb.1966). See also *Articles of Animal Drug,* 528 F.Supp. at 205.

These articles are alleged to have been adulterated while in interstate commerce and were clearly subject to seizure at any time thereafter.

The court finds that it has subject matter jurisdiction over this case. The motion to dismiss is denied.

MOTION IN LIMINE OF UNITED STATES

The United States moves *in limine* to preclude the submission of evidence of a scientific test by claimant. The United States tested the drugs that were seized as adulterated by the method of testing contained in the USP. Zenith alleges that it tested the lots of drug by an alternative method and found them to be unadulterated. This alternative method is being considered for adoption in the USP, and has been published as a proposal in Pharmaco-

poeial Forum (July-August 1982, pages 2203–4).

The legal question presented is whether the results of the alternative tests for content uniformity of the seized articles of drug performed by Zenith are admissible in this proceeding.

The drugs are alleged to be adulterated within the meaning of 21 U.S.C. Section 351(b):

If it purports to be or is represented as a drug the name of which is recognized in an official compendium, and its strength differs from, or its quality or purity falls below, the standard set forth in such compendium. Such determination as to strength, quality, or purity shall be made in accordance with the tests or methods of assay set forth in such compendium, except that whenever tests or methods of assay have not been prescribed in such compendium, or such tests or methods of assay as are prescribed are, in the judgment of the Secretary, insufficient for the making of such determination, the Secretary shall bring such fact to the attention of the appropriate body charged with the revision of such compendium, and if such body fails within a reasonable time to prescribe tests or methods of assay which, in the judgment of the Secretary, are sufficient for purposes of this subsection, then the Secretary shall promulgate regulations prescribing appropriate tests or methods of assay in accordance with which such determination as to strength, quality, or purity shall be made. No drug defined in an official compendium shall be deemed to be adulterated under this subsection because it differs from the standard of strength, quality, or purity therefor set forth in such compendium, if its difference in strength, quality, or purity from such standard is plainly stated on its label. Whenever a drug is recognized in both the United States Pharmacopoeia and the Homoeopathic Pharmacopoeia of the United States it shall be subject to the requirements of the United States Pharmacopoeia unless it is labeled and offered for sale as a homoeopathic drug, in which case it shall be subject to the provisions of the Homoeopathic Pharmacopoeia of the United States and not to those of the United States Pharmacopoeia.

The term "official compendium" is defined in 21 U.S.C. Section 321(j), as "the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, official National Formulary, or any supplement to any of them." It is undisputed that the articles seized are drugs, the name of which is recognized in the USP, that the USP is an official compendium and that the methods of assay and standards set forth in the USP relative to the seized articles of drugs have been in effect since prior to the manufacture of the seized articles.

The government asserts that the results of the alternative test used by Zenith are irrelevant to a determination of adulteration under section 351(b). Zenith claims that the alternative test method is a more accurate one for measuring the content uniformity of the articles of drug than the test method set forth in the USP. Zenith argues that the results of this test are relevant to a determination of whether the seized articles comply with the standards set in the USP.

"Relevancy describes the relationship between a proffered item of evidence and a proposition which is provable or material in a given case." *United States v. Craft,* 407 F.2d 1065, 1069 (6th Cir.1969).

■ By the clear language of section 351(b) the determination of whether articles of drug meet the standards set forth in the USP "shall be made in accordance with the tests or methods of assay set forth in" an official compendium. There are only two exceptions to this provision: when methods of assay have not been prescribed in an official compendium, or when the Secretary (of Health and Human Services) determines that the methods of assay prescribed are insufficient. Neither of these exceptions is applicable to this case. Since the determination of adulteration under section 351(b)

must be made by reference to the testing methods specified in the USP, evidence of the results of other testing methods is irrelevant to that determination.

Several cases cited by Zenith involve determinations of adulteration under section 351(c). That section applies to drugs that are not subject to the provisions of section 351(b), because they are not recognized in an official compendium. Section 351(c) does not specify any particular method of testing to be used. These cases are thus distinguishable from this case.

The fact that the method of testing used by Zenith has been proposed for inclusion in the USP does not give this court authority to make its determination based on the results of that test. The test has not been approved and adopted by the USP.

The motion *in limine* is granted.