COMMISSIONER, INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Appellant–Plaintiff,

v.

RLG, INC. and Lawrence Roseman d/b/a Spring Valley Landfill and Lawrence Roseman, et al., Appellees–Defendants.

No. 27A02–9909–CV–646.

Court of Appeals of Indiana.

Sept. 20, 2000.

---

Karen M. Freeman–Wilson, Attorney General of Indiana, Anita Wylie, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Albert C. Harker, Kiley Kiley Harker Michael & Certain, Marion, Indiana, Attorney for Appellees.

1.  Oral argument was held on July 27, 2000.

## OPINION

FRIEDLANDER, Judge

The Indiana Department of Environmental Management (IDEM) appeals a negative judgment that determined that Lawrence Roseman, the sole officer and shareholder of RLG, Inc. (RLG), is not personally liable for the civil penalties assessed against RLG for environmental violations.[1]  IDEM presents one issue for review:

Did the trial court err in determining that Roseman could not be held personally liable for environmental violations committed by RLG?

We affirm.

The facts disclose that Roseman is the sole officer and shareholder of RLG, a Pennsylvania corporation.  RLG owned and operated the Spring Valley Landfill in Wabash, Indiana.  Spring Valley was in operation from November 1988 until December 1991.  In August 1993, IDEM filed a complaint for preliminary and permanent injunctions and for civil penalties based upon Spring Valley's violations of the Indiana Environmental Management Act (IEMA).[2]

Prior to the hearing, IDEM and RLG negotiated two agreements that were filed with the court.  RLG agreed to remedy the violations at the landfill, to submit a final closure plan, to close the site, and to submit a post-closure plan, all by dates certain.  After RLG failed to fulfill the terms of the agreements, the trial court entered an order finding RLG in contempt and finding violations.  The contempt order included civil fines of five thousand dollars per day for each day RLG remained out of compliance with the obligations within the agreements.

IDEM filed an amended complaint seeking to impose personal liability on Roseman for the environmental violation based

2.  The provisions of IEMA were recodified in 1996 at Ind.Code Ann. §§ 13–11–1–1 through 13–30–9–8 (West 1998).

upon Roseman's capacity as the sole corporate officer of RLG. In July 1994, Roseman filed answers to IDEM's interrogatories. The answers disclosed that RLG was insolvent.

RLG did not answer the complaint and the trial court entered a default judgment against RLG in November 1995. The default judgment was in the amount of $3,175,000 and granted IDEM the possession of RLG assets that IDEM had attached prior to the judgment.[3] In September 1995, IDEM moved for and was granted access to Spring Valley so that IDEM could perform remediation.

In June 1999, the trial court entered a judgment in favor of Roseman. Excluding formal parts, the order states:

This matter is before the Court following trial to the Court on February 9, 1999. No witness[es] were called at the trial; rather, the Plaintiff introduced three documentary exhibits marked as Plaintiffs (sic) Exhibits A, B and C. Counsel also entered into this stipulation of fact:

"The individual defendant Lawrence Roseman, at all times relevant in this case, acted only as an employer, officer, shareholder and director of the Defendant RLG, Inc., and was the sole officer, shareholder and director of RLG, Inc."

Counsel then presented arguments and the Court took the matter under advisement to give Counsel the opportunity to submit trial briefs and suggested findings.

### FINDINGS OF FACT

1. Defendant, Larry Roseman, was the sole corporate officer, shareholder and director of RLG Inc., from August 29, 1988 to April 27, 1994.

2. Defendant, Larry Roseman acted only as an employee,[4] officer, shareholder and director of RLG, Inc., from August 29, 1988 to April 27, 1994.

3. There is no evidence the defendant Larry Roseman ever acted in an individual capacity personally with respect to the activities which surrounded the management and operation of RLG, Inc.

4. As the sole corporate officer, shareholder, and director of RLG, Inc., Roseman signed RLG, Inc.'s Indiana Department of Environmental Management Solid Waste Facility Character Disclosure Statement (Exhibit C) on its behalf this way: "Larry Roseman, President RLG Inc." The "Applicant/Responsible Party" was signed "RLG Inc."

5. There is no evidence that defendant Larry Roseman personally acted in an individual capacity when he participated in activities surround[ing] the environmental regulations alleged in Plaintiff's second amended complaint.

6. The Plaintiff, Indiana Department of Environmental Management, has failed to prove facts which establish that defendant Larry Roseman, can be held personally liable for default judgment of defendant RLG., Inc.

### CONCLUSIONS OF LAW

From the foregoing, the Court concludes:

1. The law is with the Defendant, Larry Roseman, and against the Plaintiff, Indiana Department of Environmental Management.

2. As a matter of law, the Plaintiff, Indiana Department of Environmental Management, cannot hold the de-

---

**3.** The prejudgment garnishment assets were the subject of a previous appeal to this court in *Bowyer Excavating v. Indiana Dep't of Envtl. Mgt.,* 671 N.E.2d 180 (Ind.Ct.App. 1996), *trans. denied.*

**4.** As noted in the trial court's rendition of the stipulation, Roseman stipulated that he was an "employer." *Record* at 791.

fendant Larry Roseman personally liable of acts done as a corporate officer for defendant RLG, Inc.

3. As a matter of law, the Plaintiff Indiana Department [of] Environmental Management, cannot hold the defendant, Larry Roseman, personally liable for the corporate debts of defendant [RLG], Inc.

### *JUDGMENT*

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED,** by the Court that Judgment is entered in favor of the Defendant Larry Roseman and against the Plaintiff Indiana Department of Environmental Management that the Plaintiff take nothing by way of it's (sic) complaint against the Defendant Larry Roseman. Judgment on the Findings.

*Record* at 803–05 (footnote supplied).

■ IDEM is appealing a negative judgment. In order to prevail when appealing from the entry of a negative judgment, an appellant must establish that the evidence unerringly leads to but one conclusion and that the trial court did not reach that conclusion. *OVRS Acquisition Corp. v. Community Health Serv., Inc.,* 657 N.E.2d 117 (Ind.Ct.App.1995), trans. denied. "The appellant can attack the trial court's judgment only as contrary to law." *Id.* at 125.

IDEM contends that the trial court's determination is contrary to a theory of liability known as the "responsible corporate officer doctrine." IDEM urges the adoption of the theory in Indiana. At the heart of IDEM's argument is the logical extension of the evidence that Roseman is the sole officer, shareholder, and director of RLG: if any corporate officer is responsible for the acts of the corporation it must be Roseman. IDEM asks us to surmise that Roseman necessarily is responsible because a corporation acts only through its officers and directors and Roseman solely holds those titles. Thus, Roseman is responsible for RLG's violations of IEMA.

As IDEM acknowledges, there is no evidence of a nexus between the violations and any actions or knowledge by Roseman. IDEM acknowledges that it did not pursue traditional means of reaching a corporate officer, such as piercing the corporate veil, because there is no evidence that Roseman treated the company as his alter-ego.

■ We consider first the law with regard to the imposition of personal liability upon corporate officers for acts performed on behalf of the corporation. In the context of rejecting personal liability of a corporate officer in an action for breach of an employment contract and for tortious interference with the contract, our Supreme Court stated:

The personal liability of corporate officers and shareholders is determined by common law rules of agency. It is a matter of black-letter law that where the agent acted within the scope of the agent's authority in signing a contract on behalf of the principal, the remedy of one seeking to enforce the contract is against the principal and not the agent. As a result, corporate officers and shareholders are generally not personally liable for the contractual obligations of the corporation.

These rules are derived from the fact that a corporation is a legal entity separate and distinct from its shareholders and officers. This has been so since the earliest days of our corporate law. In *Dartmouth College v. Woodward,* 17 U.S. (4 Wheat) 518, 4 L.Ed. 629, 4 L.Ed. 629 (1819), Chief Justice Marshall recognized that corporations had constitutionally protected contract rights. Thus, "[t]he corporate creature of the law–'invisible, intangible, and existing only in contemplation of law'—was endowed with basic legal rights, even against its creator." Bernard Schwartz, *Main Currents in American Legal Thought* 121 (1992) (quoting from *Dartmouth College,* 4 Wheat. at 636, 4 L.Ed. 629). Although a corporation acts only through its agents, officers, sharehold-

ers, and employees, it is the corporate entity that is legally responsible for those acts.

*Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1231–32 (Ind.1994) (footnote and some citations omitted). The court, in *Winkler,* considered the argument that the corporate officer was the sole decision-maker:

Winkler concedes that the employment contract shows that Overbay signed it in his capacity as president of Typoservice, but contends that the corporate veil should be pierced because as the majority shareholder and president of Typoservice, Overbay was the sole decision-maker at Typoservice (including with respect to the transaction in question here), and he personally received the few assets not transferred in the sale to Midwest.

As the Court of Appeals correctly noted, Indiana courts are reluctant to disregard a corporate entity, but will do so to prevent fraud or unfairness to third parties. The burden is on the party seeking to pierce the corporate veil to establish "that the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote injustice." *Gurnik [v. Lee,* 587 N.E.2d 706, 710 (Ind.Ct.App.1992) ].

*Id.* at 1332 (some citations omitted).

The court in *Winkler* determined that the corporate officer could not be subjected to personal liability for tortious interference with an employment contract:

Overbay correctly argues that he cannot be subject to personal liability for tortious interference with the contract because the uncontested evidence showed that he negotiated the asset purchase agreement as an officer of Typoservice, not in his individual capacity. A corporate officer is not liable for inducing the corporation's breach of its contract if the officer acts within the scope of his official duties on behalf of the corporation

and not as an individual for his own advantage.

*Id.* at 1234 n. 7 (citations omitted).

As IDEM candidly admits, there is no evidence that Roseman acted in any manner, except to sign documents as the corporate officer of RLG. IDEM contends that Roseman is personally liable under the "responsible corporate officer" doctrine. IDEM contends that the doctrine is in the nature of strict liability and should be interpreted such that Roseman, as the sole corporate officer, is perforce personally liable for the corporation's actions.

IDEM identifies sections of IEMA and the Solid Waste Management rules within the administrative code that refer to "person" and "person and corporations." *See* IC § 13–7–1–17 (recodified as IC § 13–11–2–158, defining a "person" as an "individual" and as a "corporation" under some sections of the environmental management laws); IC § 13–30–4–1 (providing for civil penalties for a "person who violates" certain environmental management laws); IC § 13–30–6–4 (providing that "[a] responsible corporate officer may be prosecuted for a violation of" certain sections of the environmental management laws); 329 IAC 2–8–4 (repealed by Solid Waste Management Board, Mar. 14, 1996) (requiring a "responsible corporate officer" to sign an application for a solid waste permit). From the references to various statutes and rules, IDEM reasons "that under the applicable Indiana statutory and regulatory language, there can be personal liability on the part of the corporate official without the need of piercing the corporate veil." Appellant's Brief at 10. IDEM contends that the statutory and regulatory language is consistent with adoption of the "responsible corporate officer" doctrine.

We turn to a review of the "responsible corporate officer doctrine." The doctrine was introduced by *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) with regard to a corporate officer's criminal responsibility for viola-

tions of the Federal Food, Drug and Cosmetic Act of 1938. The Court noted that the only manner in which a corporation acts is through the individuals who act on its behalf. The Court stated:

> The prosecution to which Dotterweich was subjected is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger.

\* \* \*

> To speak with technical accuracy, under [the Act] a corporation may commit an offense and all persons who aid and abet its commission are equally guilty. Whether an accused shares responsibility in the business process resulting in unlawful distribution depends on the evidence produced at the trial and its submission—assuming the evidence warrants it—to the jury under appropriate guidance. The offense is committed ... by all who do have such a responsible share in the furtherance of the transaction which the statute outlaws, namely, to put into the stream of interstate commerce adulterated or misbranded drugs. Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting.

\* \* \*

> It would be too treacherous to define or even to indicate by way of illustration the class of employees which stands in such a responsible relation. To attempt a formula embracing the variety of conduct whereby persons may responsibly contribute in furthering a transaction forbidden by an Act of Congress, to wit, to send illicit goods across state lines,

would be mischievous futility. In such matters the good sense of prosecutors, the wise guidance of trial judges, and the ultimate judgment of juries must be trusted.

*Id.* at 280–85, 64 S.Ct. 134 (citations omitted). The Court made no attempt to classify those who could be held personally responsible for violations of the Act, but found that the evidence was sufficient to hold the defendant, who was president and general manager of the corporation, personally criminally responsible for violations. The Court did not recount the evidence of the defendant's actions, inactions, or responsibilities vis-à-vis the corporation or the violations.

A corporate officer's criminal liability for violations of the same act was the focus of the decision in *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). The *Park* court rejected the corporate officer's contention of error based upon the failure to instruct the jury that the government had to prove "wrongful action" by the officer that would be akin to blameworthiness. The Court, however, addressed the concern that literal enforcement "might operate too harshly by sweeping within its condemnation any person however remotely entangled in the proscribed shipment." *Id.* at 669, 95 S.Ct. 1903 (quoting *United States v. Dotterweich*, 320 U.S. at 284, 64 S.Ct. 134). In *Park*, the Court noted that *Dotterweich* included a limiting principle through the references to settled doctrines of criminal law and the wisdom of jurists and juries. The Court elaborated on the backdrop for the doctrine:

> The rule that corporate employees who have "a responsible share in the furtherance of the transaction which the statute outlaws" are subject to the criminal provisions of the Act was not formulated in a vacuum. Cases under the [Act] reflected the view both that knowledge or intent were not required to be proved in prosecutions under its criminal provisions, and that responsible cor-

porate agents could be subjected to the liability thereby imposed. Moreover, the principle had been recognized that a corporate agent, through whose act, default, or omission the corporation committed a crime, was himself guilty individually of that crime. The principle had been applied whether or not the crime required "consciousness of wrongdoing," and it had been applied not only to those corporate agents who themselves committed the criminal act, but also to those who by virtue of the managerial positions or other similar relation to the actor could be deemed responsible for its commission.

*United States v. Park,* 421 U.S. at 670, 95 S.Ct. 1903 (citations omitted). In *Park,* the Court outlined evidence of the defendant's responsibility for the matters. The defendant, the chief executive officer for the corporation, testified that he was responsible for the sanitary condition of food offered for sale for the entire corporation. He stated that he delegated to others the correction of sanitary problems brought to his attention. While the Court did not require evidence of wrongdoing by the defendant, the Court clarified that a responsible corporate agent could not be held criminally responsible for violations based solely upon his office. In expanding upon the doctrine announced in *Dotterweich,* the Court stated:

> [I]n providing sanctions which reach ... the individuals who execute the corporate mission ... the Act imposes not only a positive duty to seek out and remedy violations when they occur but also, and primarily, a duty to implement measures that will insure that violations will not occur.

* * *

The theory upon which responsible corporate agents are held criminally accountable for "causing" violations of the Act permits a claim that a defendant was "powerless" to prevent or correct the violation to "be raised defensively at a trial on the merits." *United States v. Wiesenfeld Warehouse Co.,* 376 U.S. 86, 91, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964). If such a claim is made, the defendant has the burden of coming forward with evidence, but this does not alter the Government's ultimate burden of proving beyond a reasonable doubt the defendant's guilt, including his power, in light of the duty imposed by the Act, to prevent or correct the prohibited condition.

* * *

The concept of a "responsible relationship" to, or a "responsible share" in, a violation of the Act indeed imports some measure of blameworthiness; but it is equally clear that the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so. The failure thus to fulfill the duty imposed by the interaction of the corporate agent's authority and the statute furnishes a sufficient causal link. The considerations which prompted the imposition of this duty, and the scope of the duty, provide the measure of culpability.

* * *

Viewed as a whole, [the jury instructions] did not permit the jury to find guilt solely on the basis of respondent's position in the corporation....

* * *

[T]he main issue for determination [is] not respondent's position in the corporate hierarchy, but rather his accountability, because of the responsibility and authority of his position, for the conditions which gave rise to the charges against him.

*Id.* at 672–75, 95 S.Ct. 1903 (some citations omitted).

After *Dotterweich* and *Park*, federal courts applied the doctrine to other public health laws, including the Radiation Control for Health and Safety Act of 1968 (RCHSA) in *United States v. Hodges X-Ray*, 759 F.2d 557 (6th Cir.1985), and the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901–6992k (1990), in *United States v. Production Plated Plastics*, 742 F.Supp. 956 (W.D.Mich.1990). State courts recognized the doctrine's applicability to state environmental laws with regard to civil liability. *See, e.g., T.V. Spano Bldg. Corp. v. Dep't of Nat. Resources*, 628 A.2d 53 (Del.1993) (evidence did not support imposition of civil penalties against corporate officer); *Matter of Dougherty*, 482 N.W.2d 485 (Minn.Ct.App. 1992) (evidence supported imposition of personal liability for civil penalties against a responsible corporate officer); *State v. Missouri Resource Recovery, Inc.*, 825 S.W.2d 916 (Mo.Ct.App.1992) (evidence of president's participation and direction in violations was sufficient to find personal liability for civil penalties), trans. denied.; *State v. Rollfink*, 162 Wis.2d 121, 475 N.W.2d 575 (1991) (evidence disclosed that president controlled operations and was responsible for violations allowing imposition of civil penalties).

Our review of the federal cases that have addressed the doctrine and the state cases that have adopted the doctrine does not persuade us that it is applicable under these circumstances. An examination of a sampling of the state cases discloses a common thread: the existence of evidence that the responsible corporate officer engaged in, had knowledge of, should have had knowledge of, or was responsible for the corporation's actions or inactions that violated public health laws and resulted in the violations.[5]

■ In *In the Matter of Dougherty*, 482 N.W.2d 485, the court explained the "responsible corporate officer" doctrine and noted that three essential elements are required before the doctrine can be invoked:

(1) the individual must be in a position of responsibility which allows the person to influence corporate policies or activities; (2) there must be a nexus between the individual's position and the violation in question such that the individual could have influenced the corporate actions which constituted the violations; and (3) the individual's actions or inactions facilitated the violations.

*Id.* at 490; *see also State v. Modern Recycling, Inc.*, 558 N.W.2d 770 (Minn.Ct.App. 1997). The evidence in the present case does not establish the three elements outlined in *Dougherty*. The evidence discloses that Roseman is the sole corporate officer, director, and shareholder for RLG and that he signed documents as the president. Even if we were to infer that, by virtue of his office, Roseman was in a position to influence corporate policy, there is no evidence of the required nexus between his position and the violations or his actions or inactions with regard to the violations.

In *T.V. Spano Bldg. Corp. v. Dep't of Nat. Resources*, 628 A.2d 53, the court recognized federal court precedent allowing personal liability for a responsible corporate officer. In rejecting personal liability for the president of the corporation, the court stated:

We hold that corporate officers may be held personally liable in appropriate circumstances for actually making corpo-

---

5. In fact, our research revealed only one state case in which the court determined that the president of a corporation was personally liable for environmental law violations without evidence of personal knowledge or participation. *See State v. Kailua Auto Wreckers*, 62 Haw. 222, 615 P.2d 730, 740 (1980) (where husband, who was vice-president of the corporation, admitted violations, the wife who did not participate, could not escape liability by claiming ignorance where she negligently failed "to exercise reasonable care to discover, remedy and prevent corporate violations . . .").

rate decisions resulting in the improper disposition of hazardous waste under [the Delaware act]:

> Corporate officers, charged in law with affirmative official responsibility in the management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval. [Quoting Timothy P. Bjur and J. Jeffrey Reinholtz, 3A Fletcher Cyclopedia Corporations § 1135 (1990).]

> It is not enough that the officer knew of an improper disposal [of hazardous waste]. Simple knowledge is not sufficient for the imposition of personal liability. Rather, the officer must be shown to have been "actively involved in the alleged violative activity." [United States v.] Conservation Chemical Co. of Illinois, 733 F.Supp. [1215] at 1221 [ (N.D.Ind.1989) ]. The State must show that the officer directed, ordered, ratified, approved, or consented to the improper disposal.

* * *

Applying the above standards to the present case, we find that Spano is not personally liable for improperly disposing of the hazardous waste at the Raintree site. Spano was a corporate officer who had broad, general authority for the Raintree project and direct knowledge of the disposal trenches, but he did not direct, control, approve, consent to, or ratify the decision to dispose of the construction waste. We find the Board's determination that Spano was not a responsible party is supported by substantial evidence and is consistent with applicable law.

*Id.* at 61–62 (footnote and some citations omitted); *cf. State v. Missouri Resource Recovery, Inc.,* 825 S.W.2d 916, 926 ("the general assembly had a wide-ranging intent to impose liability upon all persons involved in the handling and disposal of hazardous wastes, including officers and directors of a certified resource recovery facility, when the officer or director actively controls or is directly involved in the proscribed activity"). The requirement, as set out in *T.V. Spano Bldg. Corp. v. Dep't of Nat. Resources,* 628 A.2d 53, that a corporate officer direct, order, ratify, approve, or consent to the violative conduct cannot be met in the present case.

In *State v. Standard Tank Cleaning Corp.,* 284 N.J.Super. 381, 665 A.2d 753 (1995), the court stated:

> [I]t is reasonable to construe the term "responsible corporate official" as used in [the New Jersey statute] in conformity with the concept of "responsible corporate officer" developed in *Dotterweich* and *Park* and applied in [*United States v.*] *Brittain,* [931 F.2d 1413 (10th Cir. 1991) ]. Under this view, an individual may not be held liable for a corporation's violation of the [water pollution act] simply because he or she occupies the position of corporate officer or director. Instead, there must be a showing that a corporate officer had actual responsibility for the condition resulting in the violation or was in a position to prevent the occurrence of the violation but failed to do so. Stated another way, we construe the [water pollution act] to impose liability only upon corporate officers who are in control of the events that result in the violation. Absent such a showing, a corporate officer cannot be said to be responsible for the violation.

*Id.* at 764. Here, no evidence exists that Roseman was in control of the events that resulted in the violation.

The corporate officer's participation in the violative acts was the cornerstone for personal liability in *State v. Lundgren,* 94 Wash.App. 236, 971 P.2d 948 (1999). The court affirmed a finding that the president and sole shareholder of a corporation was

personally liable for civil penalties incurred due to the evidence of his knowledge and control of the facility that discharged pollutants without a permit. The court noted: "If a corporate officer participates in the wrongful conduct, or knowingly approves the conduct, then the officer, as well as the corporation, is liable for the penalties." *Id.* at 952. The evidence in the present case does not disclose any participation in, or knowledge of, wrongful conduct by Roseman.

In *Rooney v. Commonwealth*, 27 Va. App. 634, 500 S.E.2d 830 (1998), the court analyzed the "responsible corporate officer" doctrine and concluded that the president of a corporation could not be held personally liable for violations based solely upon his office:

> Here, the stipulation of facts stated only that Rooney was the president of the corporation. However, the Supreme Court [in *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48] made clear that an officer's direct responsibility to fulfill a legal duty may not be predicated solely on the basis of the officer's title or position in the corporation.

*Id.* at 833. Here, the only evidence is that Roseman was president and the sole officer and shareholder of RLG. The evidence discloses that Roseman conducted himself as a corporate officer. Under the *Rooney* analysis, that evidence, standing alone, is insufficient to impose personal liability upon a corporate officer based upon the "responsible corporate officer doctrine."

As noted above, the weight of authority requires some evidence of knowledge, action, or inaction by a corporate officer before personal liability for public health law violations may be imposed. Personal liability may not be imposed based solely upon a corporate officer's title. No evidence of Roseman's knowledge, action, or inaction, with regard to the violations, exists. Given Indiana's long-standing commitment to the integrity of the corporate structure, and the total lack of evidence regarding Roseman's conduct, the circumstances present in this case do not allow us to invoke the "responsible corporate officer doctrine" to impose personal liability upon Roseman. Further, because the requisite evidence is not present here, we leave for another day the determination whether Indiana should adopt the doctrine.

The trial court's judgment is not contrary to law and the evidence does not lead unerringly to the conclusion opposite to that reached by the trial court.

Judgment affirmed.

MATHIAS, J., and NAJAM, J., concur.