**UNITED STATES of America,**
**Plaintiff,**

v.

**ACRI WHOLESALE GROCERY COMPANY, a corporation, et al., Defendants.**

**Crim. No. 74–63.**

United States District Court,
S. D. Iowa, C. D.

Feb. 24, 1976.
Nunc Pro Tunc Order,
March 11, 1976.

Allen L. Donielson, U. S. Atty., George H. Perry and Paul A. Zoss, Asst. U. S. Attys., Des Moines, Iowa, for plaintiff.

Louis A. Lavorato, West Des Moines, Iowa, for defendants.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This is an appeal from defendants' convictions for violation of the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (1970). Defendants' convictions followed a trial before the Honorable Ronald E. Longstaff, United States Magistrate for the Southern District of Iowa, pursuant to 18 U.S.C. § 3401 (1970).

The scope of review by a district court following a conviction before a magistrate is "the same as on appeal from a judgment of a district court to a court of appeals." Rules of Procedure for the Trial of Minor Offenses before United States Magistrates, Rule 8(d), Title 18, United States Code; 18 U.S.C. § 3402 (1970).

■ Therefore, in reviewing the sufficiency of evidence, the Court will view the evidence in its entirety and in the light most favorable to the Government. The judgment below and the Magistrate's denial of defendants' motion for judgment of acquittal will be upheld if supported by substantial evidence of record. *United States v. Kelton,* 519 F.2d 366, 367 (8th Cir. 1975); *United States v. Prionas,* 438 F.2d 1049 (8th Cir. 1971), *cert. denied,* 402 U.S. 977, 91 S.Ct. 1683, 29 L.Ed.2d 144. Finally, in reviewing alleged errors in the admission of evidence, where there is substantial, competence evidence to support the conviction without consideration of the allegedly inadmissible evidence, then a defendant has failed to show prejudicial error. *Alexander v. United States,* 241 F.2d 351, 356–57 (8th Cir. 1957).

Defendants were charged in a four-count information alleging, in substance, that the defendants permitted food, held after shipment in interstate commerce, to become adulterated within the meaning of 21 U.S.C. §§ 342(a)(3) and (4) (1970);[1] this being a prohibited act under 21 U.S.C. § 331(k) (1970). The information named as defendants Acri Wholesale Grocery Company, a corporation; Joseph D. Acri, president of the corporation; and Anthony Acri, vice-president of the corporation.

The relevant facts are as follows: In July and October of 1973, inspectors from the Federal Drug Administration (FDA) conducted extensive inspections of the Acri Wholesale Grocery Company warehouse in Des Moines, Iowa. The inspections were conducted during normal business hours. At both inspections, the FDA inspectors presented credentials and a written notice of inspection to Anthony Acri. Further, all indications pointed to routine inspections for contaminated or adulterated foodstuffs. The inspectors were occasionally accompanied by Anthony Acri or other employees on inspection tours of the warehouse. Photographs were taken by the inspectors at both inspections and a stroboscopic light source was utilized for photographs of the warehouse interior. No

---

1. Section 342 provides in part that a "food shall be deemed to be adulterated—

  \*   \*   \*   \*   \*   \*

(3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health; . . . ."

clandestine measures were taken by the inspectors to hide their photographic activities. The photographs depicted conditions existing inside and immediately adjacent to the exterior of the warehouse, including areas from which the inspectors obtained testing samples. These samples were taken from food substances, usually flour and sugar, which appeared to the inspectors to be contaminated by rodents. Receipts for all samples taken by the inspectors were given to Anthony Acri; and written reports of warehouse conditions, as observed and recorded by the inspectors, were given to Anthony Acri following both inspections.

Generally, relations between the FDA inspectors and defendants Joseph and Anthony Acri were cordial and business-like. Anthony Acri acknowledged to the inspectors that the warehouse had some rodent control problems, and elicited suggestions from the inspectors on efficient methods to deal with the problems. In some instances, Acri followed these suggestions, including weed clearance and contracting with a rodent extermination company.

Analysis of the samples obtained in the warehouse showed the existence of cat and rodent urine, excrement and hair in most of the flour and sugar samples. The inspectors also reported live and dead rodents and a live cat in the warehouse and around lots of foodstuffs. High weed growth was observed outside the warehouse which, according to the inspectors, substantially contributes to rodent infestation by providing nesting areas. Several of the inspectors testified that, in their opinion, the Acri warehouse was one of the most rodent contaminated warehouses they had ever inspected.

A report of the samples analysis was not given to defendants until approximately two to four weeks prior to trial, although Anthony Acri indicated to the inspectors that he desired an analysis report fairly soon after the inspections. However, about three weeks after the October inspection, a complaint for for-

feiture of certain food lots was served upon defendants and the lots were destroyed. Most of the allegedly contaminated food lots were voluntarily destroyed by the defendants during the inspections.

On appeal to this Court, the defendants assign as error the following issues:

1. The introduction at trial of photographs taken by the FDA inspectors during the warehouse inspections.

2. The FDA's failure to furnish the defendants with portions of the samples taken from the warehouse and a copy of the sample analysis results.

3. The trial court's denial of the motions for judgment of acquittal by Joseph Acri and Anthony Acri. The motions asserted the lack of personal responsibility of these individual defendants for the actions of the corporation.

## I. PHOTOGRAPHS

The defendants initially contend the trial court erred in admitting into evidence photographs taken during the inspections. In the first instance, defendants argue that the photographs were taken without their permission and are, therefore, inadmissible because the photographic activities were outside the scope of 21 U.S.C. § 374(a) (1970). Section 374(a) provides in pertinent part:

(a) For purposes of enforcement of this chapter, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to in-

spect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials; containers, and labeling therein.

Pursuant to Section 374(a), a flexible standard of "reasonableness" defines the contours of an FDA inspection. *Cf. Durovic v. Palmer*, 342 F.2d 634 (7th Cir. 1965). The Court believes, under the circumstances present in this case, the photographing of warehouse conditions by FDA agents was not unreasonable. The agents were in the warehouse pursuant to lawful authority and following all procedural requirements mandated under Section 374, *supra*. Further, although it is an unnecessary basis for an inspection, the defendants fully consented to the inspections by FDA. *See United States v. Del Campo Baking Mfg. Company*, 345 F.Supp. 1371 (D.Del.1972).[2] The photographs were taken as part of the inspection, and the inspectors made no efforts to conceal the fact that photographs were being taken. Moreover, in this case the photographs introduced into evidence at trial were merely cumulative of the inspectors' testimony regarding the insanitary conditions in the warehouse.

■ Defendants also argue their rights under the Fourth Amendment to the United States Constitution were violated by the inspectors photographic activities which exceeded their statutory authority. However, as previously discussed, the FDA agents were properly acting pursuant to statutory procedures. Assuming *arguendo*, the photographing of evidence in this case is a "search and seizure" under the Fourth Amendment, the Court believes that once the validity of the inspection is established, the propriety of a photographic "search" is coextensive with the validity of the inspection. *Cf. Carter v. Beto*, 426 F.2d 242 (5th Cir. 1970). The Court therefore finds that the inspection was conducted pursuant to proper authority, and that no illegal or unwarranted intrusion resulted from the photographic activities.

■ Finally, it is asserted by the defendants that they should have been given *Miranda*[3] warnings prior to any photographic activities. The Court finds this contention meritless. Defendants were neither in "custody" nor deprived of their freedom at any time in question. *See United States v. Thriftimart, Inc.*, 429 F.2d 1006, 1011 n.6 (9th Cir. 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 185; *United States v. Del Campo Baking Mfg. Company, supra*. Moreover, and contrary to defendants' contention, there is no evidence of record that the focus of the Government's intent in inspecting the warehouse had, at any relevant time, shifted from a mere inspection to a criminal investigation.

## II. SAMPLES AND ANALYSES

■ The defendants also complain that the FDA agents did not furnish them portions of the samples taken from the warehouse or provide a copy of the sample analyses results. Sections 372(b)

---

**2.** In *Del Campo*, the court applied the United States Supreme Court's holding in *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) to inspections under the Food, Drug, and Cosmetic Act. The court held:

> The defendants could not have demanded a search warrant. The lawfulness of this search was not dependent upon any consent. Its authority was statutory.

> "We have little difficulty in concluding that where, as here, regulatory inspections further urgent federal interest and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute." *United States v. Biswell*, 406 U.S. 317, 92 S.Ct. 1597.

> \* \* \* \* \* \*

> "In the context of a regulatory inspection system of business premises which is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute." 406 U.S. at 315, [92] S.Ct. at 1596.

345 F.Supp. at 1376–77.

**3.** *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966).

534

and 374(d) of Title 21, United States Code, defendants contend, require the FDA to provide these items, and a failure to provide sample portions or analyses results is jurisdictional to any prosecution under the Act. The Government claims that no request was made for sample portions, and that under Section 374(d), the Government need not provide warehouse owners with analyses results.

Section 372(b) provides as follows:

> (b) Where a sample of a food, drug, or cosmetic is collected for analysis under this chapter the Secretary shall, *upon request,* provide a part of such official sample for examination or analysis by any person named on the label of the article, or the owner thereof, or his attorney or agent; except that the Secretary is authorized, by regulations, to make such reasonable exceptions from, and impose such reasonable terms and conditions relating to, the operation of this subsection as he finds necessary for the proper administration of the provisions of this chapter. (emphasis added)

Defendants admit no request was formally made for portions of the samples, and the Court finds no error in FDA's failure to provide the sample portions. Furthermore, the Court finds that absent some formal "request," as obviously contemplated by the statute, the Government did not err in failing to provide sample portions.

■ The defendants further argue that they were "lulled" by FDA agents into believing that a copy of the analyses results would be provided to them. The pertinent statutory provision, Section 374(d), provides as follows:

> (d) Whenever in the course of any such inspection of a factory or other establishment where food is manufactured, processed, or packed, the officer or employee making the inspection obtains a sample of any such food, and an analysis is made of such sample for the purpose of ascertaining whether such food consists in whole or in part of any filthy, putrid, or decomposed substance, or is otherwise unfit for food, a copy of the results of such analysis shall be furnished promptly to the owner, operator, or agent in charge.

The Government contends the conspicuous absence of the term "warehouse" in subsection (d), unlike the preceding subsections of Section 374, evinces a Congressional intent to exclude warehouses from the assay analysis provision contained in subsection (d).

Although a careful reading of both Section 374 and its legislative history[4] strongly supports the Government's contention, the Court believes it unnecessary to determine the issue on this basis. Rather, by defendants' own admissions, they received a copy of the assay results several weeks prior to trial. In the absence of a showing of some prejudice, this is sufficient. Moreover, assuming defendants were entitled as a matter of law to a copy of the results but had not received them, they would still be required to show that their "ability 'to make a complete defense' was prejudiced thereby." *United States v. Cassaro, Inc.,* 443 F.2d 153, 157 (1st Cir. 1971), quoting, *Triangle Candy Co. v. United States,* 144 F.2d 195, 199 (9th Cir. 1944). The defendants have failed to show any prejudice occasioned by their failure to receive either the sample portions or the assay results.

## III. PERSONAL RESPONSIBILITY

Joseph Acri and Anthony Acri claim their motion for acquittal should have been granted because of their lack of personal responsibility for the corporate actions resulting in this criminal prosecution.

In *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), the United States Supreme Court held that the Food, Drug, and Cosmetic Act "dispenses with the conventional require-

4. 2 U.S.Code Cong. & Admin.News pp. 2198, 2200 (1953).

ment for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." *Id.* at 281, 64 S.Ct. at 136, 88 L.Ed. at 51. The Court went on to state that culpability under the Act is shared "by all who . . . [have] a responsible share in the furtherance of the transactions which the statute outlaws." *Id.* at 284, 64 S.Ct. at 138, 88 L.Ed. at 53.

The content of the *Dotterweich* case was recently reappraised and upheld by the Court in *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). The Court held:

> The concept of a "responsible relationship" to, or a "responsible share" in, a violation of the Act indeed imports some measure of blameworthiness; but it is equally clear that the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so. The failure thus to fulfill the duty imposed by the interaction of the corporate agent's authority and the statute furnishes a sufficient causal link. The considerations which prompted the imposition of this duty, and the scope of the duty, provide the measure of culpability. 421 U.S. at 673–74, 95 S.Ct. at 1912, 44 L.Ed.2d at 502.

The substantial weight of evidence in this cause clearly establishes the requisite "responsibility and authority" of the individual defendants. Both Joseph Acri and Anthony Acri were officers of the corporation; both were key employees and daily operatives of the firm's activities; both gave orders to the work crews and generally supervised the warehouse work during the day and evening shifts. Anthony Acri, whose title was vice-president and warehouse super-

intendent, stated to an FDA inspector that he was responsible for building maintenance. Joseph Acri, a part-owner and president of the corporation, stated at trial that he was "in a responsible position for running that whole business, not only the warehouse, but the office, the buying, the selling, the bank statements. I am in charge of running the whole business."

The Court believes the evidence adduced at trial substantially supports the trial court's finding of defendants' personal liability. *See United States v. Park, supra; United States v. Cassaro, Inc., supra,* 443 F.2d at 157.

Accordingly, there being no error of record in this cause, the judgment of conviction heretofore entered by the United States Magistrate is affirmed.