COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Willis and Annunziata
Argued at Salem, Virginia


PATRICK D. ROONEY, III, a/k/a
 FRANCIS PATRICK ROONEY, III
                                        OPINION BY
v.        Record No. 1402-97-3    JUDGE SAM W. COLEMAN III
                                         JUNE 30, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                 William N. Alexander, II, Judge

          H. Victor Millner, Jr., (Charles J.
          Strauss; H. Victor Millner, Jr., P.C., on
          brief), for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.



     Code §§ 57-35.15 and 57-35.21 require that a cemetery

company deposit into a trust account certain percentages of

receipts from the sale of preneed and perpetual care burial

property and services.[1]  Failure of a cemetery company to deposit

receipts into the preneed and perpetual care trust accounts is a

Class 1 misdemeanor.  Code § 57-35.35.

_____

     [1]Code § 57-35.15 provides that "[e]ach cemetery company
shall deposit a minimum of ten percent of the receipts from the
sale of graves and above-ground crypts and niches . . . in [a]
perpetual care trust fund within thirty days after the close of
the month in which such receipts are paid to it."
     Code § 57-35.21 provides that a cemetery company "deposit
into a trust fund forty percent of the receipts from the sale of
property or services pursuant to a preneed burial contract, when
the delivery thereof will be delayed more than 120 days."  Code
§ 57-35.11 defines "preneed burial contracts" as agreements
pertaining to burial property or services that are contracted for
at any time other than the time of death or while death is
imminent.

Rooney Enterprises, Inc. (corporation) operated a cemetery in Franklin County. Upon receiving payments pursuant to preneed and perpetual care burial contracts, the corporation failed to make deposits into the preneed and perpetual care trust accounts. Based upon the corporation's inaction, the president of the corporation, Patrick D. Rooney, III, was convicted under Code § 57-35.35 for the corporation's failure to make deposits into trust accounts in accordance with Code §§ 57-35.15 and 57-35.21, and for embezzlement in violation of Code § 18.2-111. We hold that Rooney is not personally criminally liable for the corporation's failure to make the mandatory trust deposits and that the evidence is insufficient to support the embezzlement conviction. Accordingly, we reverse the convictions and dismiss the indictments.

## BACKGROUND

The parties entered into a stipulation of facts, which stated that the corporation operated several cemeteries in Virginia and West Virginia. Rooney was the president of the corporation. On November 10, 1990, the corporation purchased Cedar Lawn Burial Park, Inc., a cemetery company which operated a Franklin County cemetery. The corporation operated the cemetery until May 6, 1991, when the Franklin County Circuit Court placed the corporation in receivership pending dissolution.

The corporation's accounting sheets, submitted by Rooney in his defense, indicated that the corporation received payments for

preneed and perpetual care burial property and services during the time period in question.[2] The parties stipulated that the corporation made no deposits into the cemetery's preneed and perpetual care trust accounts during its entire period of operation. They further stipulated that the corporation deposited all receipts into its central corporate account and used them to pay routine business expenses and salaries. Rooney testified that he was unaware of the statutory trust requirements.

On this evidence, the trial court convicted Rooney for violating Code §§ 57-35.15 and 57-35.21 by failing to deposit receipts into the preneed and perpetual care trust accounts and for embezzlement of the amounts withheld from the trust accounts.

FAILURE TO MAKE PRENEED AND PERPETUAL CARE TRUST DEPOSITS

Rooney contends the trial court erred by convicting him for the corporation's failure to deposit the requisite receipts in trust. He reasons that the statute does not impose strict criminal liability on a corporate officer for the corporation's

---

[2]The trial court held that the Commonwealth was "time-barred" from prosecuting Rooney for receipts that should have been placed in the trust accounts before April 28, 1991. Because the corporation was in receivership on May 6, 1991, the court's ruling relegated the Commonwealth to prosecuting Rooney for the corporation's failure to deposit receipts into the trust accounts on April 30, 1991 with respect to preneed and perpetual care payments received in March 1991. See Code §§ 57-35.15 and 57-35.21 (requiring trust deposits to be made "within thirty days after the close of the month in which such receipts are paid" to the cemetery company).

violations of the trust provisions.[3]

Criminal statutes are strictly construed against the Commonwealth and applied only to the classes of persons or entities which the legislature clearly intended to be within the statute's ambit.  See King v. Commonwealth, 6 Va. App. 351, 354-55, 368 S.E.2d 704, 706 (1988).  Because Code § 57-35.35, making it a Class 1 misdemeanor to breach Code § 57-35.15 or 57-35.21, is criminal in nature, it must be strictly construed, and any ambiguity or reasonable doubt as to its meaning or scope shall be resolved in favor of the defendant.  See Mason v. Commonwealth, 16 Va. App. 260, 262, 430 S.E.2d 543, 543-44 (1993); Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979).

We find that Code §§ 57-35.15 and 57-35.21 do not clearly specify that a corporate officer shall be criminally responsible for the corporation's failure to make deposits into the trust accounts.  Those statutes place the responsibility of making the deposits on a "cemetery company."  Code 57-35.11 defines a "cemetery company" as "any person engaged in the business of" selling certain burial property or services.  The statutes are

---

[3]Rooney also argues that the evidence failed to prove that funds were received during the time period for which the corporation was required to make deposits into the trust accounts.  Our review of the record indicates that Rooney failed to raise this issue to the trial court in arguing his motion to strike the evidence or his motion to dismiss.  Thus, Rule 5A:18 precludes our review of whether the corporation was required to make the deposits in the first instance.

clear that a corporation, individual or individuals operating as a cemetery company are strictly liable for failing to make the required trust deposits as a "person" engaged in the business of selling burial plots and services.  See Landmark Communications, Inc. v. Commonwealth, 217 Va. 699, 702-03, 233 S.E.2d 120, 123 (1977) (corporation may be "person" within meaning of criminal statute).  It does not follow, however, that a corporate officer may be held personally liable under the statutes when the corporation is the "person" who violates the trust provisions. Cf. Code § 18.2-232 (imposing liability for criminal misrepresentation upon "[a]ny person, firm, association or corporation or officer, agent or employee thereof") (emphasis added); Code § 18.2-348 (proscribing "[a]ny person or any officer, employee or agent of any firm, association or corporation" from aiding prostitution or illicit sexual intercourse) (emphasis added).  Accordingly, we hold that the statutes do not make corporate officers criminally liable for the corporation's failure to make the statutory trust deposits.

The Commonwealth argues that even if the statute does not provide for personal liability for corporate officers, the "responsible corporate officer" doctrine should apply to uphold the trial court's ruling that Rooney failed to make the requisite trust deposits.  See United States v. Park, 421 U.S. 658 (1975); United States v. Dotterweich, 320 U.S. 277 (1943).  In Dotterweich, the United States Supreme Court held that a

corporate officer may be held personally liable for the corporation's violation of strict liability provisions of the Federal Food, Drug and Cosmetic Act because the officer had a "responsible share in furtherance of the transaction which the statute outlaws." 320 U.S. at 284. In so holding, the Court found that the purposes of the FDCA "touch the lives and health of people which, in circumstances of modern industrialism, are largely beyond self-protection." Id. at 280. The Court also noted that the statute "dispenses with the conventional requirement for criminal conduct -- awareness of some wrongdoing." Id. at 281. Recognizing that "the only way a corporation can act is through the individuals who act on its behalf," the Court held that "[i]n the interest of the larger good [the FDCA] puts the burden of acting at hazard upon a person otherwise innocent but standing in a responsible relation to a public danger." Id. (emphasis added). Reaffirming Dotterweich, the Court in Park elaborated on Dotterweich's "responsible relation" test and held that strict liability under the FDCA may be imputed to a corporate officer who "had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so."[4] Park,

---

[4]The "responsible relation" standard of corporate officer liability developed in Dotterweich and Park has become commonly referred to as the "responsible corporate officer doctrine." See, e.g., United States v. MacDonald & Watson Waste Oil Co., 933 F.2d 35, 50 (1st Cir. 1991); In Re Dougherty, 482 N.W.2d 485, 489-90 (Minn. Ct. App. 1992).

421 U.S. at 673.

Assuming, without deciding, that the "responsible corporate officer" doctrine is applicable, as the Attorney General argues, to the preneed and perpetual care trust requirements of Code §§ 57-35.15 and 57-35.21,[5] we find the evidence, viewed in the light most favorable to the Commonwealth, see Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), failed to prove that Rooney had a "responsible relation" to the corporation's obligation and failure to make the trust deposits. Although a corporate president has overall responsibility for the duties and obligations of the corporation and the responsibility to ensure compliance with legal requirements, the responsible corporate officer doctrine imposes criminal responsibility only upon the officer or officers who are directly responsible or accountable for the corporation's compliance. Whether a corporate officer has a direct responsibility to fulfill or comply with a legal obligation "depends 'on the

---

[5]See United States v. Cordoba-Hancapie, 825 F. Supp. 485, 508 (1993) ("In cases involving matters traditionally within the public-welfare realm -- dangerous food, misbranded pharmaceuticals, toxic substances and the like -- the strong public interests in enforcing the regulations at issue may arguably be viewed as justifying imposition of a strict duty of supervision and control upon corporate officers [as in Park and Dotterweich]."); Dougherty, 482 N.W.2d at 489-90 (applying responsible corporate officer doctrine to state hazardous waste laws that "pervasively affect activities which threaten human health and safety"). See also Norman Arbams, Criminal Liability of Corporate Officers for Strict Liability Offenses -- A Comment on Dotterweich and Park, 28 UCLA L. Rev. 463, 475-77 (1981) (discussing implications of Dotterweich and Park).

evidence produced at trial and its submission -- assuming the evidence warrants it -- to the jury under appropriate guidance.'" Park, 421 at 669 (quoting Dotterweich, 320 U.S. at 284). Here, the stipulation of

facts stated only that Rooney was the president of the corporation.  However, the Supreme Court made clear that an officer's direct responsibility to fulfill a legal duty may not be predicated solely on the basis of the officer's title or position in the corporation.  See Park, 421 U.S. at 674 (upholding jury instruction which "did not permit the jury to find guilt solely on the basis of respondent's positions in the corporation [but rather] fairly advised the jury to find guilt it must find respondent had a responsible relationship to the situation"); Dotterweich, 320 U.S. at 285 (declining to "define or even to indicate by way of illustration the class of employees which stands in . . . a responsible relation" to a corporation's misconduct).  The Commonwealth produced no evidence describing Rooney's duties, powers, and responsibilities as president of the corporation, or that he had an accounting responsibility or direct corporate responsibility for withholding or depositing the funds in trust.  Compare United States v. New England Grocers Supply Co., 488 F. Supp. 230, 233-34 (D. Mass. 1980) (government failed to prove responsible relation where evidence merely showed that accused was chief executive officer of corporation), with Park, 421 U.S. at 663 n.7, 664 (relying upon description of president's duties and powers in corporation's bylaws and defendant's concession that conduct in question was something that he was "responsible for in the entire operation of the

company"), and <u>United States v. Acri Wholesale Grocery Co.</u>, 409 F. Supp. 529, 535 (S.D. Iowa 1976) (officers' testimony and statements to inspectors regarding responsibility and authority established responsible relation to corporation's misconduct).

Thus, even if the "responsible corporate officer" doctrine applies, Rooney may not personally be held criminally liable for the corporation's violation of Code §§ 57-35.15 and 57-35.21 because the evidence failed to prove that Rooney had a "responsible relation" to the corporation's obligation to make preneed and perpetual care trust deposits.

EMBEZZLEMENT

Rooney next contends the evidence is insufficient to support the embezzlement conviction. When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense. See <u>Moore v. Commonwealth</u>, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); <u>Derr v. Commonwealth</u>, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). Under familiar principles of appellate review, we will not reverse the judgment of the trial court, sitting as the finder of fact in a bench trial, unless it is plainly wrong or without evidence to support it. See <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

To establish the crime of embezzlement,[6] the Commonwealth must prove that the accused wrongfully appropriated to his or her own benefit property entrusted or delivered to the accused with the intent to deprive the owner thereof.  See Zoretic v. Commonwealth, 13 Va. App. 241, 243, 409 S.E.2d 832, 833-34 (1991).  Although the Commonwealth need not establish the existence of a formal fiduciary relationship, it must prove that the defendant was entrusted with the property of another.  See Chiang v. Commonwealth, 6 Va. App. 13, 17, 365 S.E.2d 778, 780 (1988).  Furthermore, the Commonwealth must prove that the defendant had the specific intent of depriving the rightful owner of property entrusted to him or her.  See Waymack v. Commonwealth, 4 Va. App. 547, 549-50, 358 S.E.2d 765, 766 (1987).

[6]Code § 18.2-111 provides, in pertinent part, that

> [i]f any person wrongfully and fraudulently
>
> use, dispose of, conceal or embezzle any
>
> money . . . , which he shall have received
>
> for another . . . or by virtue of his office,
>
> trust, or employment, or which shall have
>
> been entrusted or delivered to him by another
>
> . . . he shall be guilty of embezzlement.

The evidence is insufficient to support the embezzlement conviction in two respects.  First, the evidence failed to prove that either Rooney or the corporation was "entrusted" with the property of another.  Code §§ 57-35.15 and 57-35.21 required the corporation to deposit certain percentages of receipts from the sale of certain burial property and services into the preneed and perpetual care trust accounts.  The monies paid to the corporation as consideration for preneed and perpetual care property and services belonged to the corporation; they were not "entrusted" to the corporation with the expectation that the corporation would return the monies or deliver them to a third person.  Cf. Gwaltney v. Commonwealth, 19 Va. App. 468, 475-76, 452 S.E.2d 687, 691-92 (1995) (finding monies paid by customers of convenience store to be "entrusted" to store's cashiers).  The monies were paid to the corporation as consideration for property or services that the corporation would provide the purchaser in the future.  The statute governs the corporation's management of its own property in order to ensure that it will have adequate monetary resources to deliver future burial property or services.  Thus, the evidence failed to establish that receipts from the sale of preneed and perpetual care property and services were property that belonged to another and were "entrusted" to the corporation or to Rooney.

Second, even assuming the corporation's failure to fund the trust accounts constituted embezzlement, the evidence is

insufficient to impute personal criminal liability to Rooney.

> [T]he general rule is that where the crime charged involves guilty knowledge or criminal intent, it is essential to the criminal liability of an officer of a corporation that he actually and personally did the acts which constitute the offense, or that they were done under his direction or with his permission.

Bourgeois v. Commonwealth, 217 Va. 268, 274, 227 S.E.2d 714, 718 (1976); see 26 Am.Jur.2d Embezzlement § 30 at 380 (1987) ("An officer of a corporation may be held criminally liable for the embezzlement or larceny of the property of a third person through a corporate act, if the act is done by the individual officer, at her direction, or with her permission."). In the present case, the only proof of Rooney's involvement with the funds is the stipulation that he was the corporation's president. The record is devoid of any evidence that Rooney misappropriated the funds for his personal use or for non-corporate purposes or that he directed or approved such misappropriation. Cf. Compton v. Commonwealth, 22 Va. App. 751, 756, 473 S.E.2d 95, 97 (1996).

For the foregoing reasons, we reverse the convictions and dismiss the charges.

Reversed and dismissed.