COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Kelsey and Petty
Argued at Richmond, Virginia


ROBERT RAY CROUCH

MEMORANDUM OPINION[*] BY
v.      Record No. 1404-13-2              JUDGE WILLIAM G. PETTY
MAY 27, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
J. Martin Bass, Judge Designate

Christopher M. Reyes, Assistant Public Defender (Office of the
Public Defender, on briefs), for appellant.

Steven A. Witmer, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Robert Ray Crouch appeals his conviction of five counts of obtaining money by false

pretenses, in violation of Code § 18.2-178.[1]  On appeal, Crouch argues that the trial court erred

in failing to strike the evidence as to those charges because the Commonwealth allegedly failed

to prove that Crouch took property belonging to another.  For the reasons set forth below, we

reverse the judgment of the trial court with respect to the obtaining money by false pretenses

convictions.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Crouch was also convicted of nine counts of failure to deposit cemetery perpetual care
funds, in violation of Code § 54.1-2319.  Crouch did not challenge those convictions.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence presented at trial established that in July 2009 Crouch registered Stonecrest Financial, Inc. ("Stonecrest") with the State Corporation Commission of Virginia.[2] In September 2009, Crouch, through Stonecrest, purchased History Land Memorial Park cemetery. Stonecrest, doing business as Meadow-Brooke Memorial Gardens, was licensed by the Cemetery Board of the Department of Professional and Occupational Regulation of the Commonwealth of Virginia. As required by law, the cemetery established and maintained a preneed trust account with the Bay Trust Company. See Code § 54.1-2325.[3]

Starting December 11, 2009, Crouch sent Bay Trust a series of demands for the withdrawal of funds from Meadow-Brooke Memorial Gardens's preneed trust account based on services purportedly rendered. Crouch made four such demands, totaling $34,420.51.[4] Each time, Bay Trust delivered checks payable to Meadow-Brooke Memorial Gardens for the sum requested. The checks were ultimately deposited into Stonecrest's checking account. When

---

[2] The company name is spelled Stone Crest Financial throughout the transcript. However, the certificate of incorporation lists the name as Stonecrest Financial. We will refer to the company as such.

[3] Code § 54.1-2325 requires a cemetery owner to establish a special trust account called a "Preneed Trust Account" and to deposit forty percent of the receipts from the sale of property or services to be delivered in the future into the trust account. These funds may only be withdrawn after the property is delivered or the services rendered. See Code § 54.1-2330. A willful violation of these statutes constitutes a Class 1 misdemeanor. Code § 54.1-2342.

[4] Crouch made demands for $2,196; $11,129.51; $5,190; and $15,905.

Crouch deposited the last check, for $15,905, on June 23, 2010, he withdrew $9,000 of it in cash. Fifteen Commonwealth's witnesses testified that they did not receive the services that Crouch certified under oath had been provided to justify the trust fund disbursements.

On May 26, 2010, Crouch submitted to Bay Trust a demand for the withdrawal of $50,000 in "excess funds" maintained in the preneed trust account. See Code § 54.1-2330 (requiring "the trustee . . . , as of the close of the cemetery company's fiscal year, upon written assurance to the trustee of a certified public accountant . . . , [to] return to the seller any income in the seller's account which, when added to the specific funds, is in excess of the current cost requirements for all undelivered property or services included in the seller's preneed burial contracts").

Along with the demand, Crouch submitted a statement of trust fund accounting, allegedly prepared by Charles Henson of Henson's Accounting & Tax Services, Inc. The Virginia Board of Accountancy, however, has no record of any such accountant or accounting firm.[5] The demand was also accompanied by a compliance agent's certificate, allegedly prepared by Cynthia Kimbro. Kimbro testified at trial, however, that she did not sign or prepare any such certificate. Regardless, Bay Trust delivered to Meadow-Brooke Memorial Gardens a check for $50,000. At 1:13 p.m. on May 28, 2010, Crouch deposited the check into Stonecrest's bank account. Then, at 1:22 p.m. that same day, Crouch withdrew $9,000 by cashing a check payable to "CASH," drawn on the Stonecrest account.[6]

---

[5] At trial, the Commonwealth presented evidence that the address of the accounting firm was actually the location of a vacant parking lot in the City of Richmond.

[6] Crouch also withdrew an additional $30,000 with a check made payable to Monumental Realty Group, Inc. The record is somewhat unclear as to the exact nature of the payment. However, during oral argument, the Commonwealth conceded that throughout the trial, Crouch, an officer of the Stonecrest corporation, and Stonecrest itself were treated at trial as a single

Crouch was indicted by a grand jury on July 12, 2012. Following a jury trial, Crouch was convicted of, among other things, five counts of obtaining money by false pretenses. He was sentenced to a total of sixty months in jail, with one year suspended, and a $12,500 fine—twelve months in jail and a $2,500 fine for each of the five counts. The trial court ordered that Crouch be placed on post-release supervision for one year following the date of his release from incarceration.

II.

On appeal, Crouch argues that the trial court erred by failing to strike the indictments for obtaining money by false pretenses because the Commonwealth failed to prove that Crouch took property belonging to another. Crouch argues that he acted on behalf of Stonecrest when he requested funds be disbursed from Stonecrest's preneed trust account and deposited them into the company's operating account. Thus, he argues, while his actions resulted in the transfer of funds from one account to another, the legal ownership of those funds remained unchanged.[7] We agree.

"On review of a challenge to its sufficiency, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below, and grant to it all reasonable inferences fairly deducible therefrom." Nolen v. Commonwealth, 53 Va. App. 593, 595, 673 S.E.2d 920, 921 (2009). "'Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond

entity. Therefore, we will not consider whether Crouch's withdrawal of the money from the Stonecrest operating account constituted a crime.

[7] Crouch concedes that he obtained physical possession of the funds, but maintains that ownership never changed, arguing that "[a]t all times Stonecrest Financial was the legal owner of the funds."

- 4 -

a reasonable doubt.'"  Carter v. Commonwealth, 54 Va. App. 700, 703, 682 S.E.2d 77, 78 (2009)

(quoting United States v. Powell, 469 U.S. 57, 67 (1984)).

Code § 18.2-178 states, "If any person obtain, by any false pretense or token, from any

person, with intent to defraud, money, a gift certificate or other property that may be the subject

of larceny, he shall be deemed guilty of larceny thereof . . . ."  Furthermore,

> [i]n order to sustain a conviction for larceny by false pretenses, the
> Commonwealth must prove: "(1) an intent to defraud; (2) an actual
> fraud; (3) use of false pretenses for the purpose of perpetrating the
> fraud; and (4) accomplishment of the fraud by means of the false
> pretenses used for the purpose, that is, the false pretenses to some
> degree must have induced the *owner* to part with his property."

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (emphasis added)

(quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)).  A

criminal false pretense has been defined as follows:

> "[T]he false representation of a past or existing fact, whether by
> oral or written words or conduct, which is calculated to deceive,
> intended to deceive, and does in fact deceive, and by means of
> which *one person obtains value from another* without
> compensation.  According to the definition, the false pretense must
> be a representation as to an existing fact or past event.  False
> representations amounting to mere promises or statements of
> intention have reference to future events and are not criminal
> within the statute, even though they induce the party defrauded to
> part with his property.  But if false representations are made, some
> of which refer to existing facts or past events, while others refer
> solely to future events, a conviction may be had if it is shown that
> any of the representations as to existing facts induced the
> complaining witness to part with his property."

Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (emphasis added)

(quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).  "The crime

is complete when the fraud intended is consummated by obtaining the property sought by means

of the false representations . . . ."  Quidley v. Commonwealth, 221 Va. 963, 966, 275 S.E.2d 622,

625 (1981). However, "'[a]n essential element of larceny by false pretenses is that both title to and possession of property must pass from the victim to the defendant (or his nominee).'" Baker v. Commonwealth, 225 Va. 192, 194, 300 S.E.2d 788, 789 (1983) (quoting Cunningham v. Commonwealth, 219 Va. 399, 402, 247 S.E.2d 683, 685 (1978)).

This case is controlled by our decision in Rooney v. Commonwealth, 27 Va. App. 634, 500 S.E.2d 830 (1998). In Rooney, the corporation failed to make payments into the corporation's preneed trust account upon receiving payments pursuant to preneed burial contracts. Id. at 638, 500 S.E.2d at 831. This Court reversed the corporation president's embezzlement conviction after finding that money paid to a corporation as consideration for preneed property and services is the property of the cemetery corporation—"[t]he monies paid to the corporation for preneed . . . property and services belonged to the corporation; they were not 'entrusted' to the corporation with the expectation that the corporation would return the monies or deliver them to a third person."[8] Id. at 644, 500 S.E.2d at 834. Furthermore, we noted that

> [t]he monies were paid to the corporation as consideration for property or services that the corporation would provide the purchaser in the future. The statute governs the corporation's management *of its own property* in order to ensure that it will have adequate monetary resources to deliver future burial property or services. Thus, the evidence failed to establish that receipts from the sale of preneed and perpetual care property and services *were property that belonged to another* and were "entrusted" to the corporation or to Rooney.

Id. at 644-45, 500 S.E.2d at 834 (emphasis added). Therefore, we held that the president of the cemetery corporation was not guilty of embezzling corporate funds because the money was not

---

[8] "To establish the crime of embezzlement . . . , the Commonwealth must prove that the accused wrongfully appropriated to his or her own use or benefit, with the intent to deprive the owner thereof, the property entrusted or delivered to the accused." Zoretic v. Commonwealth, 13 Va. App. 241, 243, 409 S.E.2d 832, 833-34 (1991).

"entrusted" to the corporation on behalf of another; rather, it became the property of the corporation upon receipt.  Id. at 645, 500 S.E.2d at 834.

Similarly, to uphold Crouch's conviction for obtaining money by false pretenses, we must be satisfied that the evidence at trial was sufficient to prove that Crouch obtained money, with the intent to defraud, *from the owner* by a false pretense.  "The gravamen of the offense . . . is the obtainment of ownership of property . . . ."  Quidley, 221 Va. at 966, 275 S.E.2d at 624.  As we noted in Rooney, however, money paid into Stonecrest's preneed trust account is money that belonged to the corporation.  The money was not held in trust on behalf of the purchaser, and there was no person or entity other than Stonecrest that had any equitable interest in it.  Simply put, Stonecrest did not obtain ownership of the money by a false pretense because it already had ownership of the money. [9]

### III.

Despite its acknowledgement that the preneed trust account money was owned by Stonecrest, the Commonwealth argues that Crouch waived his objection to the sufficiency of the evidence by failing to object to two faulty jury instructions which, it argues, became the law of the case and bind Crouch on appeal.  Specifically, the jury instructions pertaining to larceny by

---

[9] The larceny by false pretense indictments failed to allege from whom the property was stolen.  Furthermore, at trial the Commonwealth did not argue that the trustee's possessory rights to the money were sufficient to support a conviction of larceny.  Finally, on appeal, the Attorney General conceded "that the trust funds were owned by Stonecrest, under this Court's holding in Rooney v. Commonwealth, 27 Va. App. 634, 500 S.E.2d 830 (1998)."  Appellee's Br. at 6 n.2.  Thus, we will leave for another day the question of whether money obtained by a beneficiary from a trustee by means of a false pretense constitutes the taking of the property of another for purposes of establishing a larceny.  See generally Latham v. Commonwealth, 184 Va. 934, 37 S.E.2d 36 (1946) (recognizing that proof of any legal interest or special ownership that may be less than absolute title is sufficient proof of ownership to sustain an indictment for larceny or for similar offenses); Model Penal Code § 223.0(7) ("'[P]roperty of another' includes property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property . . . .").

false pretenses did not require the Commonwealth to prove that Crouch's fraud resulted in his obtaining money that was the property of another.

At the conclusion of all the evidence, Crouch made a motion to strike the evidence and cited Rooney in arguing that the evidence failed to establish that the money did not belong to Stonecrest. Later, defense counsel also objected to the Commonwealth's proposed instructions regarding the obtaining money by false pretenses charge. In making that objection, counsel stated,

> The defendant is charged with obtaining the property of another by false pretenses. I think that that first sentence needs to say that he's charged with obtaining the property of another by false pretenses. . . . I have a problem with he's not charged with obtaining disbursement of trust funds for preneed burial contracts by false pretenses. He's charged with larceny by false pretenses or the obtaining of property of another by false pretenses.

He also asked the trial court to modify the instructions so that they either cited the statute pertaining to larceny by false pretenses verbatim, or, pointed out that larceny is the taking of the property of another. The trial court appeared to sustain this objection and noted that the instruction should be changed. However, despite Crouch's objection and the trial court's apparent ruling, it appears from the record that the instructions ultimately given did not address ownership of the property.[10]

> Normally, when a party proffers or agrees to an instruction which is contrary to a position previously argued during trial, the agreed instruction becomes the law of the case, and the party is deemed to have waived its previous objection. However, when the

---

[10] While we have the written instructions, the transcript does not set out what was actually read to the jury. Notably, the written instructions make no mention of "property of another." Instead, they required only that the Commonwealth prove beyond a reasonable doubt: that the defendant was the possessor of trust fund accounts for preneed burial services contracts; that the defendant falsely certified to the trustee that he had delivered property or performed services in fulfillment of the trust; this false representation resulted in disbursements to him of funds from the trust in excess of $200; and that he did so with the intent to defraud.

> record is clear that the party is not waiving its objection to the prior ruling, but merely proffering or agreeing to an instruction consistent with the trial court's prior ruling, the previous objection will not be waived.

WJLA-TV v. Lewis, 256 Va. 140, 159, 564 S.E.2d 383, 395 (2002) (citation omitted).

Here, Crouch preserved the issue for appeal to this Court by making a timely motion to strike the evidence. Additionally, he did not proffer or agree to a contrary jury instruction. Instead, he clearly objected to the jury instructions' lack of reference to the taking of property of another. Accordingly, we conclude that he did not waive the argument he presented in his motion to strike.

## IV.

For the foregoing reasons, we reverse Crouch's conviction and dismiss the indictments.

Reversed and dismissed.