COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

UNPUBLISHED

WALKER W. WARE, IV, A/K/A
 W. WALKER WARE, IV

                                              MEMORANDUM OPINION* BY
v.       Record No. 1458-18-2                 JUDGE WILLIAM G. PETTY
                                              OCTOBER 1, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NEW KENT COUNTY
Charles J. Maxfield, Judge Designate

Anthony G. Spencer (Law Office of Anthony G. Spencer, on briefs),
for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Walker W. Ware, IV, challenges on appeal his convictions of attempted extortion in

violation of Code §§ 18.2-59, 18.2-26 and embezzlement in violation of Code § 18.2-111. Ware

argues the evidence was insufficient to convict him of these two charges. We agree and reverse.

## I. BACKGROUND

We view the facts in the light most favorable to the prevailing party below, granting to it

the benefit of any reasonable inferences. Hall v. Commonwealth, 55 Va. App. 451, 453 (2009).

In 2004, Ware subdivided a parcel of land and recorded subdivision documents, including

a "Road Dedication and Maintenance Agreement" and Addendum 1 (Agreement). The

Agreement provided that each lot owner would "be assessed $200 per year for the maintenance

and upkeep of this right-of-way."

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Thereafter, several of the lots sold, including two lots to Stephen and Susan Cabiroy as trustees of a family trust (Cabiroy). Each year, the lot owners paid Ware in response to an invoice sent on Ware's business letterhead. Ware established a bank account separate from his business account into which he deposited the yearly fees. Ware had sole control over both bank accounts.

From the sale of the first lot in 2006 until 2014, Ware provided what the lot owners described as "minimal" maintenance. The maintenance consisted of cutting grass, weeds, and small trees in the right-of-ways. Although Ware collected fees from 2007 to 2014 and provided this "minimal" maintenance, no withdrawal was made from the segregated account prior to 2014. In 2014, Ware transferred $3,000 from the segregated account to Ware's business account. The memo line stated "Road repair GHL [Good Hope Landing Subdivision]." It is this $3,000 that the Commonwealth argues was embezzled by Ware.

Ware unilaterally modified the Agreement in 2009 by executing and recording Addendum 2. Addendum 2 increased the annual assessment from $200 to $5,000 and provided that "all property owners paying on time shall receive a discount of [$4,800]." It provided that where a payment was more than thirty days late, the entire $5,000 plus interest and late fees would be due. Invoices with the new provisions were sent on Ware's business letterhead to Cabiroy for 2010, 2011, 2012, and 2013.[1] The record indicates Cabiroy and the other lot owners paid $200 per lot during each of these years; Cabiroy paid a total of $400 each year for his two lots.

In 2014 Cabiroy sent as his annual payment a check for $356.10, which was the amount left after deducting the cost of gravel he put on the road. Ware returned the partial payment and

---

[1] The record indicates that all three lot owners paid the annual fees for these years, but only Cabiroy's invoices were introduced into evidence.

claimed that since the full road maintenance fee of $400 had not been timely paid, Cabiroy now

owed $10,000 for the two lots.  Cabiroy did not pay the 2014 road maintenance fees.

On September 2, 2015, Ware sent Cabiroy a letter on his company's letterhead.  It said,

> Please be advised that 10 (ten) days from the postmarked
> date of this correspondence I will file the enclosed
> MEMORANDUM OF LIEN at the clerk's office in New Kent
> County.  Also Enclosed is your 2015 invoice for road maintenance
> fees and past due account.

The letter noted four infractions of the subdivision restrictions that Cabiroy purportedly had

committed.  The letter concluded,

> There are actions and consequences that come with your decisions
> to disregard the rules of the subdivision.  Be advised that unless
> you come to some agreement with the Development Manager,
> Walker Ware IV, we will seek additional action, against you.
> Govern yourself accordingly.

Attached to the notice was a draft of a "Memorandum of Lien for Assessments" requested

"pursuant to Va. Code Section: 55-516" and an itemized invoice.  The invoice included the

$10,000 maintenance fees from 2014, along with interest and penalties accrued during the year,

and the additional $10,000 fees for 2015.  The invoice totaled more than $30,000.  The

Commonwealth argues that this letter from Ware threatening to file a memorandum of lien

against Cabiroy's property was a threat against the title of Cabiroy's property and was thereby

attempted extortion.

## II.  ANALYSIS

Ware argues that the evidence was insufficient to submit the embezzlement and

attempted extortion charges to a jury; he thus argues the trial court erred in denying his motion to

strike.  "A motion to strike challenges whether the evidence is sufficient to submit the case to the

jury." Lawlor v. Commonwealth, 285 Va. 187, 223-24 (2013).  "What the elements of the

offense are is a question of law that we review *de novo*.  Whether the evidence adduced is

- 3 -

sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." Id.

## A. Embezzlement

Ware argues that the evidence was insufficient to "establish beyond a reasonable doubt that the money was wrongfully appropriated, that the money was converted to Ware's own use or benefit, or that Ware acted with a fraudulent purpose and not under a bona fide claim of right." These arguments hinge on the question of whether Ware was entrusted with another's money.

"To establish the statutory crime of embezzlement under Code § 18.2-111, it is necessary to prove that the accused wrongfully appropriated to [his] use or benefit, with the intent to deprive the owner thereof, the property entrusted to [him] by virtue of [his] employment or office." Waymack v. Commonwealth, 4 Va. App. 547, 549 (1987). "Although the Commonwealth need not establish the existence of a formal fiduciary relationship, it must prove that the defendant was entrusted with the property of another." Rooney v. Commonwealth, 27 Va. App. 634, 644 (1998). A defendant wrongly appropriates the entrusted property of another "when he exercises 'unauthorized and wrongful . . . dominion and control over [it], to the exclusion of or inconsistent with [the] rights of the owner.'" Dove v. Commonwealth, 41 Va. App. 571, 577-78 (2003) (quoting Black's Law Dictionary 300 (5th ed. 1979)).

In Rooney, this Court reversed an embezzlement conviction. In that case, a cemetery owner received payments for preneed burial services and failed to put them in trust accounts as required by statute; the owner put the funds in his normal operating account and used them to pay routine business expenses. Rooney, 27 Va. App. at 639. This Court held that the funds paid by customers "were not 'entrusted' to the [owner] with the expectation that the [owner] would return the monies or deliver them to a third person." Id. at 644. Rather, the money was given to the owner "as consideration for property or services that the [owner] would provide

- 4 -

purchaser in the future." Id. at 645. This Court reversed the owner's embezzlement conviction on the basis that when the funds were paid to the cemetery owner, they became the owner's funds, not the funds of another entrusted to the cemetery owner. The payments were made with the expectation that the payment was for past or future services; the payments were not the entrusted property of another. Id.

Likewise, this Court reversed an embezzlement conviction in Dove. In Dove, a gas station operator collected the proceeds from gas sales and was supposed to remit a percentage of the sales to the station owner. Dove, 41 Va. App. at 575. There was no evidence the agreement between the operator and the owner specified how the operator was to handle the proceeds. Id. The operator deposited the proceeds into his personal bank account, used them for expenses, and failed to remit the required amount. Id. This Court reasoned that the operator's dominion and control over the funds was not "unauthorized and wrongful" when he deposited them in his own account. Id. at 579. The proceeds possessed by the operator were his property and not that of the owner; the proceeds thus did not constitute the entrusted property of another. Id. This Court concluded that although the "evidence establishe[d] that [the operator] used, for his own purposes, money owed to [the owner] by virtue of their business dealings, [that] standing alone [was] not sufficient to sustain a conviction for embezzlement." Id. ("A debtor-creditor relationship is an insufficient basis upon which to premise an embezzlement charge and conviction.").

Here, the annual road maintenance fees were *paid* to Ware, but not *entrusted* to him. The evidence showed, and the Commonwealth conceded to this Court during oral argument, the lot owners paid the road maintenance fees to Ware and expected from Ware his future service in

- 5 -

maintaining the road.[2]  See Rooney, 27 Va. App. at 645.  Moreover, nothing in the record suggests the lot owners expected Ware to "return the monies or deliver them to a third person." Id. at 644.  As in Dove, we see nothing in the record restricting use of or requiring particular handling of the fees.  See Dove, 41 Va. App. at 575.  Thus, whether Ware deposited the fees in his business or personal account, as in Rooney and Dove, or created a segregated account, Ware's dominion and control over the money was not unauthorized or wrongful.  See id. at 579; Rooney, 27 Va. App. at 645.  The fees paid to Ware became his property and were not "property of another" for purposes of embezzlement.  Contrary to the Commonwealth's argument, Ware's transfer of $3,000 from one of his bank accounts to another was not embezzlement because Ware had unrestricted dominion and control over both accounts.  The question of whether the lot owners got a "good deal" for their money is an issue of contract law and not embezzlement.[3] Even if the "evidence establishe[d] that [Ware] used, for his own purposes, money [to be used on behalf of the lot owners] by virtue of their business dealings, [that] standing alone [was] not sufficient to sustain a conviction for embezzlement."  Dove, 41 Va. App. at 579.  Because the road maintenance fees were not the entrusted property of another, the court erred in denying Ware's motion to strike the embezzlement charge.

---

[2] See Oral Argument Audio at 12:57 to 13:08 ("[Judge:]  [T]he checks were made payable to *him* [Ware].  [Commonwealth:]  Well that is correct, your Honor.  No question about that.  It seemed to me that the money was provided to him to fulfill [the road maintenance]."); id. at 11:14 to11:36 ("[Judge:]  Let me ask you the basic question.  Where is the entrustment here? . . . [T]he subdivision agreement requires effectively a prepayment to the appellant, and he is required to do road maintenance."  [Commonwealth:]  That is correct, your Honor.").

[3] We need not and do not consider the question of whether Ware provided $3,000 worth of road maintenance either before or after the money was transferred.  Each of the lot owners testified that *some* maintenance had been done.  Moreover, there was no indication of wrongdoing in Ware's use of the money in the judicially-approved settlement agreement for the civil suit, which allowed Ware to retain the money he had transferred from the segregated account and stated that the lot owners had no claims against Ware.

## B. Attempted Extortion

Ware argues there was insufficient evidence to convict him of attempted extortion because providing legal notice of intent to file a memorandum of lien was not a wrongful threat. We agree.

"[T]he gravamen of extortion is wrongfully obtaining a benefit through coercion." Strohecker v. Commonwealth, 23 Va. App. 242, 257 (1996). Extortion is "[t]o gain by wrongful methods; to obtain in an unlawful manner, as to compel payments by means of threats of injury to person, property, or reputation." Id. at 256-57 (quoting Stein v. Commonwealth, 12 Va. App. 65, 69 (1991) (quoting Black's Law Dictionary 525 (6th ed. 1990))); see Extortion, Black's Law Dictionary (11th ed. 2019) ("The practice or an instance of obtaining something or compelling some action by illegal means, as by force or coercion."). As the above definitions demonstrate, the focus in determining if a benefit was wrongfully obtained is the method employed to obtain the benefit. See United States v. White, 810 F.3d 212, 223 (4th Cir. 2016) (distinguishing between "legitimate economic threats" and "inherently wrongful" threats of violence); United States v. Coss, 677 F.3d 278, 287 (6th Cir. 2012) (reasoning that threat to publish names of delinquent debtors was not a wrongful enforcement action and therefore would not constitute extortion). Thus, a threat to exercise a lawful method of enforcement rights, without more, does not constitute extortion.

The quintessential example of lawful and valid exercise of enforcement rights is the use of the judicial process. "The prime object in having judicial tribunals is to provide a method whereby all citizens, whoever they may be, or whatever their standing, may have their disputes settled in an orderly and peaceful manner." People ex rel. Stidger v. Horan, 86 P. 263, 263 (Colo. 1905). It is in the public interest for parties to utilize judicial process, and parties therefore have an absolute privilege in presenting their cases to the court through judicial

proceedings. See Donohoe Const. Co., Inc. v. Mount Vernon Associates, 235 Va. 531, 537 (1988); see also Lindeman v. Lesnick, 268 Va. 532, 537 (2004) ("Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege.").

The Supreme Court has considered the issue of absolute privilege in the context of enforcement rights through the use of liens. Donohoe, 235 Va. 531. The developer in Donohoe had previously filed a memorandum of mechanic's lien for an amount in excess of $350,000 against a property owner. Id. at 535. At the time the lien was filed, the property owner had paid all bills from Donohoe. Although Donohoe had submitted a requisition to the property owner for about $100,000 after the filing of the lien, the amounts requested by Donohoe never approached the lien amount. Id. at 536. In the subsequent suit to enforce by Donohoe, the court concluded the lien was invalid and awarded damages to the property owner. Id. After resolution of the lien case, the property owner instituted an action against Donohoe, arguing Donohoe had slandered the property's title. Id. A jury found Donohoe liable and awarded punitive and compensatory damages. Id. at 531.

The Supreme Court reversed the jury's decision. The Court recognized that "[i]t is well settled that 'words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged.'" Id. at 537 (quoting Darnell v. Davis, 190 Va. 701, 707 (1950)). "The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation." Id. "The public interest is best served" when litigants have the freedom "to speak fully on the issues relating to the controversy." Id. One of the judicial proceedings covered by absolute privilege is the process to perfect a lien, which

includes the filing in the clerk's office of a memorandum of lien. Id. at 538 ("[T]he filing of the memorandum of . . . lien constitutes a judicial proceeding."). The Court recognized that "[f]or a claimant to obtain the remedy provided by statute, he must *perfect* his lien and, thereafter, sue to *enforce* it. The two proceedings are inseparable." Id. at 539. Thus, "relevant and pertinent" statements related to either part of the proceeding, the perfecting of a lien or the enforcement of the lien, enjoy absolute privilege. Id.; Titan Am., LLC v. Riverton Inv. Corp., 264 Va. 292, 308 (2002) ("A statement made in the course of a judicial proceeding is absolutely privileged if it is material and relevant to the proceeding."). Such statements, if relevant and pertinent, cannot be the basis for a collateral action against the filer of the lien.

Here, the Commonwealth alleged that Ware's notice of intent to place a lien on Cabiroy's property was a wrongful threat that constituted extortion. The trial court agreed and denied Ware's motion to strike, reasoning that the letter written to Cabiroy might have been an "improper means to slander the title to collect money." The court thus reasoned that Ware's notice of intent to place a lien could be a wrongful method of collecting the money. This was error. See Strohecker, 23 Va. App. at 256.

Here, Ware's letter providing notice of intent to place a lien on Cabiroy's property was part of a judicial proceeding. The judicial proceeding included both the perfecting of a lien on Cabiroy's property and the enforcement of the lien. Donohoe, 235 Va. at 539. For Ware to perfect the lien for Cabiroy's alleged unpaid assessments, Code § 55-516(C) required "a notice [to] be sent to the property owner . . . informing the property owner that a memorandum of lien will be filed in the circuit court clerk's office."[4] This notice had to be filed at least ten days prior

---

[4] We need not and do not consider the merits of Ware's civil claim in the lower court nor whether Ware's subdivision documents and Hope Landing Road Maintenance Association were valid for purposes of Code § 55-516. See Dogwood Valley Citizens Ass'n, Inc. v. Winkelman, 267 Va. 7 (2004) (holding that litigant was not a "property owners' association" as defined by the Property Owners' Association Act, Code §§ 55-508 through -516.2; rejecting litigant's

to filing of the memorandum of lien. Code § 55-516(C). The notice also had to contain seven enumerated items.[5] Code § 55-516(B). The notice Ware sent to Cabiroy stated, "Pleased be advised that 10 (ten) days from the postmarked date of this correspondence I will file the enclosed MEMORANDUM OF LIEN at the clerk's office in New Kent County." The letter included an itemized list of charges, totaling $30,247.10, that Ware alleged Cabiroy owed, and included a document labeled "Pursuant to Va. Code Section 55-516 Memorandum of Lien for Assessments." The document enumerated seven items mirroring the requirements of Code § 55-516. In sum, Ware's notice to Cabiroy was a material and relevant statement related to a judicial proceeding and thereby enjoyed absolute privilege. Titan Am., 264 Va. at 308. To find otherwise would suggest that any creditor who says, "Pay me what you owe me, or I will sue you," is guilty of attempted extortion.

The Commonwealth argues that Ware's use of required statutory procedures does not negate the wrongful threat because Ware was not entitled to the sum he was seeking. It is for the courts to adjudicate the issue of entitlement. At the time Ware sent the notice, he was utilizing the judicial process. No court had yet ruled on the merits regarding his entitlement to the sum.

---

enforcement attempt; and declaring the purported deed covenants, agreements, and restrictions void). The lawful exercise of enforcement through judicial process is not contingent on whether a litigant ultimately wins or loses. We note that the recorded documents related to road maintenance and assessments were not declared invalid until the settlement agreement in the civil suit was approved by the judge on October 13, 2017, two years after Ware's notice to Cabiroy.

[5] The notice to the land owner includes the following items listed in the code section: (1) The name of the development; (2) A description of the lot; (3) The name or names of the persons constituting the owners of that lot; (4) The amount of unpaid assessments currently due or past due relative to such lot together with the date when each fell due; (5) The date of issuance of the memorandum; (6) The name of the association and the name and current address of the person to contact to arrange for payment or release of the lien; and (7) A statement that the association is obtaining a lien in accordance with the provisions of the Virginia Property Owners' Association Act as set forth in Chapter 26 (§ 55-508 et seq.) of Title 55.

Ware had a legal claim to the amount he sought until the point a court of competent jurisdiction ruled that he did not.[6]

We conclude that Ware's written notice to Cabiroy was part of the judicial process of perfecting a lien. The relevant and material statements in the notice were thereby covered by absolute privilege and were not a wrongful threat in the context of an extortion charge.

## III. CONCLUSION

The trial court erred in denying Ware's motion to strike regarding the embezzlement indictment because the evidence was insufficient to prove the money at issue was the property of another entrusted to Ware. The trial court also erred in denying Ware's motion to strike regarding the attempted extortion indictment because the notice of intent to file a lien, the only alleged threat, was made in the context of a judicial proceeding. Accordingly, we reverse both convictions and dismiss the indictments. In view of our decision, we need not address Ware's final assignment of error arguing the civil litigation had a preclusive effect on his criminal conviction.

<u>Reversed and dismissed.</u>

---

[6] Where a plaintiff improperly litigates a claim, the judicial process affords remedies. See Code § 8.01-271.1 (frivolous or harassment suits); Montgomery v. McDaniel, 271 Va. 465, 469 (2006) (abuse of process). In fact, the trial court in the civil suit found Ware's suit to be harassment and awarded the complaining witness, Cabiroy, sanctions under Code § 8.01-271.1.